In the Matter of David C. FRAZIER.

Misc. No. 873.

United States District Court,
E.D. Louisiana,
New Orleans Division.

Sept. 13, 1984.

Gary L. Roberts, Pascagoula, Miss., for plaintiff.

Cicero C. Sessions and Sally Shushan, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for defendant.

## OPINION

EDWIN F. HUNTER, Jr., Senior District Judge.

In this suit, David Frazier challenges the constitutionality of the Local Rules for the Eastern District of Louisiana that pertain to the admission of nonresident attorneys to the Court's Bar. Frazier commenced this action by filing a petition for a writ of prohibition and other relief with the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit remanded the cause to the District Court for the Eastern District of Louisiana for appropriate proceedings and entry of an appealable judgment. The appellate court noted that the petitions for extraordinary relief were carried with the cause on remand. After all of the active and senior judges of the Eastern District recused themselves, the matter was assigned to this judge, a senior judge of the Western District of Louisiana. A preliminary motion for summary judgment and a motion to dismiss for want of jurisdiction were taken under advisement for resolution after a trial on the merits and the action was tried to the Court, sitting without a jury, on August 10, 1984. This narrative opinion will serve as the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a).

*Background*

This action arises out of a simple set of facts, none of which are disputed by the parties. David Frazier resides in Pascagoula, Mississippi and practices law with a firm located in that same city. Pascagoula is about 110 miles from New Orleans, where the Eastern District sits. Frazier is licensed to practice law in both Mississippi and Louisiana. On or about April 27, 1982, Frazier applied for general admission to the bar of the Eastern District, attaching all of the materials required by Local Rule 21.3. The matter was submitted to the Court sitting *en banc* and the Court ruled that Frazier was ineligible for general admission to the Eastern District Bar. The Clerk notified Frazier of this decision in a letter dated September 30, 1982.

In denying Frazier's application, the Court found that Frazier could not satisfy the eligibility requirements of Local Rule 21.2. This rule provides as follows:

21.2 Eligibility

Any member in good standing of the bar of the Supreme Court of Louisiana *who resides or maintains an office for the practice of law in the State of Louisiana* is eligible for admission to the bar of this court.

(emphasis added). As a nonresident member of the Louisiana state bar, Frazier can qualify for admission to the Eastern District bar only by moving to Louisiana or by opening a law office in Louisiana. In substantial effect, the Rule requires nonresident members of the Louisiana bar to open a law office in Louisiana in order to qualify for general admission to the Eastern District bar. Continuous and uninterrupted Louisiana residence or maintenance of a Louisiana law office is now a requirement for *continuing* eligibility in the Eastern District bar. *See Eastern District of Louisiana Local Rule* 21.3.1.

If a nonresident attorney cannot qualify for general admission to the Eastern District bar, then he may practice before the Court only by way of an application for *pro hac vice* admission. The procedure for *pro hac vice* admission is set forth in Local Rule 21.5, which provides as follows:

21.5. Visiting Attorneys

Any member in good standing of the bar of any court of the United States or of the highest court of any state, who is ineligible to become a member of the bar of this court, may, upon written motion of counsel of record who is a member of the bar of this court, by ex parte order, be permitted to appear and participate as co-counsel in a particular case.

The motion must have attached to it a certificate of the presiding judge or clerk of the highest Court of the State, or Court of the United States, where he has been so admitted to practice, showing that the applicant attorney has been so admitted in such Court, and that he is in good standing therein.

The applicant attorney shall state under oath whether any disciplinary proceedings or criminal charges have been instituted against him, and if so, full information about the proceedings or charges and the results thereof shall be disclosed.

An attorney thus permitted to appear may participate in a particular action or proceeding in all respects, except that all documents requiring signature of counsel for a party may not be signed solely by such attorney, but must bear the signature also of local counsel with whom he is associated.

Local counsel shall be responsible to the Court at all stages of the proceedings.

Designation of the visiting attorney as "Trial Attorney", pursuant to Rule 2.3 herein shall not relieve the local counsel of the responsibilities imposed by this Rule.

The Court finds as a fact that David Frazier would not have been denied *pro hac vice* admission had he complied with Rule 21.5.

Frazier challenges the eligibility requirements of Rule 21.2 as violative of the Commerce Clause, the Full Faith and Credit Clause, the guarantee of equal protection of the laws secured by the Due Process Clause of the Fifth Amendment, and the Privileges and Immunities Clause. Frazier also contends that limiting him to admission on a *pro hac vice* basis violates the protections of the First Amendment. The Court will consider each of these challenges in turn after addressing the defendants' objection to jurisdiction.

*Jurisdiction*

 Counsel for the district judges concede that jurisdiction exists over this type of subject matter under 28 U.S.C. § 1651. Counsel urges, however, that the Court nonetheless lacks jurisdiction on the basis that Frazier has failed to raise a substantial federal question. A federal claim is jurisdictionally insubstantial only if it is obviously without merit or it is completely foreclosed by prior decisions of the Supreme Court. *See Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974). The test for dismissal on this basis is a rigorous one and ultimate dismissal on the merits is no test of jurisdiction. *See generally* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3564 (1975). Here, the Court does not find that Frazier's claims are obviously without merit or that they are completely foreclosed by prior Supreme Court decisions. Accordingly, the Court concludes that it has jurisdiction over the subject matter and will proceed to the merits of Frazier's claims.

*Commerce Clause*

Frazier contends that Rule 21.2 violates the Commerce Clause because it has "the chilling effect of discriminating against and thereby discouraging out-of-state attorneys from the general practice of law before the Bar of the Eastern District of Louisiana." *Trial Brief for the Plaintiff*, at 12. Frazier relies upon several cases recognizing constitutional restrictions on the power of states to prefer residents over nonresidents, such as *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (Alaska could not require preferential hiring of residents over nonresidents in oil or gas exploration and development agreements); *Piper v. Supreme Court of New Hampshire*, 539 F.Supp. 1064 (D.N.H. 1982), *aff'd by an equally divided court*, 723 F.2d 110 (1st Cir.1983) (en banc), *prob. juris. noted*, —— U.S. ——, 104 S.Ct. 2149, 80 L.Ed.2d 535 (1984) (New Hampshire could not require residency for admission to the state bar); *Stalland v. South Dakota Board of Bar Examiners*, 530 F.Supp. 155 (D.S.D.1982) (similar); *Keenan v. Board of Law Examiners*, 317 F.Supp. 1350 (E.D.N.C.1970) (the court struck down

a twelve-month residency requirement for eligibility to take the North Carolina bar); *In re Jadd,* 391 Mass. 227, 461 N.E.2d 760 (1984). It must be noted at the outset that all of these cases are decided under either the Privileges and Immunities Clause or the Equal Protection Clause. The *Hicklin* Court and two circuit judges in *Piper* do intimate, however, that the Commerce Clause also limits a state's ability to prefer residents over nonresidents. *See Hicklin,* 437 U.S. at 531–34, 98 S.Ct. at 2490–91; *Piper,* 723 F.2d at 113 (Bownes and Coffin, JJ.); *see also Service Machine & Shipbuilding Corp. v. Edwards,* 617 F.2d 70 (5th Cir.1980) (a parish ordinance that required nonresident workers to obtain an identification card at a cost of ten dollars impermissibly burdened interstate commerce). Yet, even assuming that the Commerce Clause in its dormant state prohibits states from restricting admission of nonresident attorneys, it is far from clear that this particular clause places a similar restriction on the Congressionally-delegated rule-making authority of the lower federal courts.

The rule-making authority of the lower federal courts is limited only to the extent that Congress would be limited if that body itself exercised the rule-making power. Congress possesses the power to establish courts inferior to the Supreme Court and to make all laws necessary and proper for executing that power. *U.S. Const.,* art. I, § 8, cl. 9; *U.S. Const.* art. I, § 8, cl. 18. As part of the power to make necessary regulations in establishing a lower court system, Congress can prescribe rules for practice and procedure in those courts. Congress has not exercised this power directly, however, but has instead delegated the rule-making authority to the courts themselves. See 28 U.S.C. § 2071 (general delegation of rule-making authority); 28 U.S.C. § 1654 (specific delegation of authority to prescribe rules governing the appearance of counsel); *see also* F.R.C.P. 83 (authority for district courts to adopt local rules).[1] So long as the lower courts do not exceed the authority delegated to them,[2] they can prescribe rules of practice to the same extent as could Congress if it exercised the power directly.

---

**1.** Frazier does not challenge the propriety of the basic delegation of rule-making authority to the lower courts. The Constitution does require Congress to lay down policies and establish standards when it delegates legislative power. *See Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). Yet these limits on the authority of Congress to delegate its legislative power are less stringent when the entity exercising the delegated authority itself possesses independent authority over the subject matter. *United States v. Mazurie,* 419 U.S. 544, 556–57, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975). Congress need not define the standards governing the delegation as narrowly as would be required in other situations. *See United States v. Curtiss-Wright Corp.,* 299 U.S. 304, 319–22, 57 S.Ct. 216, 220–21, 81 L.Ed. 255 (1936) (Congress need not lay down narrowly definite standards in delegating authority to a president to prohibit sales of arms and munitions to certain warring nations). In the instant case, the entities exercising the delegated authority to make court rules, the lower federal courts, themselves, possess independent authority over the subject matter, practice and procedure in those courts. Section 2071 states that the rules shall be "for the conduct of their business" and requires that the court rules be consistent with Acts of Congress and the rules of practice and procedure prescribed by the Supreme Court. In light of the independent authority of the courts over practice and procedure, these standards suffice to properly delegate the rule-making authority to the lower federal courts. *Cf. Sperry v. Florida,* 373 U.S. 379, 403, 83 S.Ct. 1322, 1335, 10 L.Ed.2d 428 (1963) (35 U.S.C. § 31 contains sufficient standards to guide the Patent Office in admitting persons to practice before that body and is therefore a proper delegation of legislative authority).

**2.** That a court might adopt a local rule that bears absolutely no relationship to "the conduct of [its] business" is of course conceivable. For example, a court might attempt to regulate the price of certain produce in interstate commerce. But, here, Frazier could not cogently argue that prescribing rules for admission to a district court's bar is other than in "the conduct of [its] business." Indeed, the exercise of this power is expressly authorized by 28 U.S.C. § 1654. Similarly, Frazier does not contend that Rule 21.2 is inconsistent with an Act of Congress or a rule prescribed by the Supreme Court. Thus, it is clear that the Eastern District was acting within the scope of the powers delegated to it when it adopted the rule.

■ The Commerce Clause no more limits the authority of the Eastern District of Louisiana to prescribe local rules of practice than it would restrain Congress in exercising that power directly. The Commerce Clause is a *grant* of federal legislative power, not a restriction on that power. Frazier surely would not assert that the clause would invalidate federal legislation under another national power, such as the power to establish inferior courts and prescribe rules for their practice, merely because the legislation imposes a burden on interstate commerce. The Commerce Clause restricts *state* action where that action unduly burdens interstate commerce because of the encroachment on a power granted to the national government. *E.g., Piper,* 723 F.2d at 113. But when *national* legislative powers are exercised, either directly or by delegation, encroachment on federal power is not a concern, and the clause can serve only to expand, rather than restrict, the permissible sphere of federal regulation. Accordingly, the Commerce Clause places no limitation upon the rule-making authority delegated by Congress to the Eastern District of Louisiana. The limitations on that power must be found in other provisions of the Constitution.

### Full Faith and Credit

■ As noted earlier, the Supreme Court of Louisiana has admitted Frazier to its bar and has decreed that he is qualified to practice in Louisiana courts. Frazier urges that the Eastern District improperly denied full faith and credit to this decree when it refused him admission to its own bar. Although federal courts are not bound by the Constitution to give full faith and credit to state court judgments, Congress has made the command of Article 4, section 1 of the Constitution applicable to

federal courts by statute. *See* 28 U.S.C. § 1738. A decision of a court granting or denying admission to its bar is a judicial determination[3] and it is thus entitled to full faith and credit in a federal court. At issue is whether the Eastern District has improperly denied full faith and credit in the instant case.

■ The Court concludes that the Eastern District did not violate section 1738 when it denied Frazier admission to its bar. It is axiomatic that a state court decision is entitled to full faith and credit only to the extent that the state court had jurisdiction over the subject matter. *E.g., Halvey v. Halvey,* 330 U.S. 610, 614, 67 S.Ct. 903, 905, 91 L.Ed. 1133 (1947). A state's highest court has absolutely no jurisdiction over the subject matter of practice and procedure before the federal courts that sit in that state. Thus, a federal court does not violate the statutory command of full faith and credit when it denies admission to an attorney licensed by the state in which it sits. Moreover, the certificates of admission and of good standing issued to Frazier by the Supreme Court of Louisiana do not in fact purport to declare that Frazier is qualified to practice before the federal courts sitting in this state. The certificates state that Frazier is qualified to practice in the courts *of* this state, not that he is qualified to practice in all courts located *in* this state.

### Fifth Amendment Equal Protection

Frazier's most pertinent challenge to Rule 21.2 lies under the equal protection component of the Due Process Clause of the fifth amendment.[4] In evaluating this challenge, what the rule does and what it does not do must be kept in sharp focus. The rule does *not* bar nonresident attor-

---

**3.** *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 1311–14, 75 L.Ed.2d 206 (1983) (jurisdiction case).

**4.** Frazier's additional reliance upon the Equal Protection Clause of the fourteenth amendment is clearly misplaced as that amendment does not limit federal governmental action. The

analysis under fifth amendment and fourteenth amendment equal protection is basically the same, however, although the limitations imposed by equal protection principles on federal and state power are not always coextensive. *See Hampton v. Mow Sun Wong,* 426 U.S. 88, 100, 96 S.Ct. 1895, 1903, 48 L.Ed.2d 495 (1976).

neys who are licensed in Louisiana from general admission to the Eastern District bar. The rule *does* require such attorneys to establish an office in Louisiana as a prerequisite to their general admission. If the nonresident attorney does not open an office and thereby qualify for general admission to the district court's bar, then he can appear in a particular action only by satisfying the requirements for a *pro hac vice* appearance. *See* Eastern District of Louisiana Local Rule 21.5. The basic issue before the Court is whether this disparate treatment between resident and nonresident members of the Louisiana bar is supported by a sufficiently weighty governmental purpose and whether the means chosen in Rule 21.2 are sufficiently related to that end.

■ If a rule disadvantages a "suspect class" or impinges upon the exercise of a "fundamental right," then it will be subject to strict scrutiny under equal protection review. *E.g., Cleburne Living Center v. City of Cleburne,* 726 F.2d 191, 195–96 (5th Cir.1984). Frazier does not contend that nonresidents or nonresident attorneys are a suspect class, but he does urge that strict scrutiny should be applied here because Rule 21.2 impinges upon a fundamental right—that of practicing law. A right is "fundamental" for purposes of equal protection review only if the right

asserted is explicitly or implicitly guaranteed by the Constitution. The societal significance or commercial importance of an activity does not determine whether the right to engage in that activity is a fundamental interest for equal protection purposes. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973).

■ This Court can find no support in the document for a constitutional right to practice law. The Constitution does limit the power of states to restrict bar admissions. Yet this has occurred in the past only where the restriction bore no rational connection to the purposes for selecting members to a bar,[5] where the restriction impinges upon another interest which is constitutionally protected, such as the right to associate,[6] or where a court concluded that the restrictions discriminated against nonresidents in a manner that violated the Privileges and Immunities Clause.[7] This Court can find no Supreme Court or federal appellate decision that establishes the right to practice law as protected directly under the Constitution without resort to some other constitutional guarantee, such as equal protection of the laws. Indeed, substantial authority supports the position that a right to practice law cannot be derived independently from the Constitution.[8] The

---

**5.** *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

**6.** *See Baird v. State Bar of Arizona,* 401 U.S. 1, 6, 91 S.Ct. 702, 705, 27 L.Ed.2d 639 (1971) (plurality opinion) (membership in a particular political organization is not a ground for denying admission to a state bar).

**7.** *See Piper,* 723 F.2d at 112–18 (opinion of two judges of an equally divided court sitting *en banc* ).

**8.** The Supreme Court stated in *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (per curiam summary reversal):

[There is no] basis for the argument that the interest in appearing *pro hac vice* has its source in federal law.... There is no right of federal origin that permits such lawyers to appear in state courts without meeting that State's bar admission requirements. This Court, on several occasions, has sustained state bar rules that excluded out-of-state coun-

sel from practice altogether or on a case by case basis.... These decisions recognize that the Constitution does not require that because a lawyer has been admitted to the bar of one State, he or she must be allowed to practice in another.

439 U.S. at 443, 99 S.Ct. at 701 (citations omitted). While it is true that Frazier has met the *State's* bar admission requirements, he remains an "out-of-state" lawyer as to the Eastern District's bar admission requirements. As such a lawyer does not have a right protected directly under the Constitution to appear even temporarily before the Court, Frazier's claim of a fundamental right to appear as a permanent member of the bar appears all the more tenuous. *See also Martin v. Walton,* 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961), *dismissing for want of a substantial federal question the appeal from* 187 Kan. 473, 357 P.2d 782 (1960) (members of the Kansas bar *who were residents* of Kansas could be required to associate local counsel if they regularly engaged in practice out of the state);

Court therefore concludes that the right to practice law is not a fundamental interest for purposes of equal protection review and it will not apply strict scrutiny on that basis.

 ■ Frazier also attempts to invoke strict scrutiny because of an alleged infringement of his constitutionally-protected right of interstate travel. There is some question at the outset as to whether a restriction that is based merely on residency and which does not impose a waiting period prior to receipt of state benefits impermissibly infringes upon the right to interstate travel. *Compare Memorial Hospital v. Maricopa County*, 415 U.S. 250, 255, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306 (1974) (the Court noted that decisions striking down durational residency requirements do not impair the validity of a mere requirement of residency to enjoy a state privilege) *with Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (the Court noted that the Alaska statute involved did not impose any threshold waiting period but did not determine whether the law should be subjected to the higher level of scrutiny applied in the durational residency cases). What is clear, however, is that a restriction based on residency does not warrant strict scrutiny merely because it impinges to some extent on the right to travel. *Maricopa County*, 415 U.S. at 256, 94 S.Ct. at 1081. The requirement must constitute a "penalty" upon the exercise of the right of interstate travel before an underlying compelling state interest need be shown. 415 U.S. at 258, 94 S.Ct. at 1082. The Supreme Court has established that the denial of a basic necessity of life does constitute a penalty, but that tribunal has not further clarified the standards for determining when a penalty has been imposed. *See* 415 U.S. at 259, 94 S.Ct. at 1082. The Supreme Court has expressly reserved the question of whether a requirement of residency to obtain permission to

*Kovrak v. Ginsburg*, 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46 (1958), *dismissing for want of a substantial federal question the appeal from* 392 Pa. 143, 139 A.2d 889.

practice a profession constitutes a penalty. *See Shapiro v. Thompson*, 394 U.S. 618, 638 n. 21, 89 S.Ct. 1322, 1333 n. 21, 22 L.Ed.2d 600 (1969).

 ■ The Court need not define the precise contours of the penalty analysis to determine that the requirement imposed in the instant case is not a penalty on the exercise of the right of interstate travel. The basic disability resulting from the failure to open a Louisiana office, the inability to practice before the Eastern District, can be overcome quite easily. Frazier does not contend that he would not be allowed to appear *pro hac vice* in any case he might have before the Eastern District by complying with Local Rule 21.5.[9] The Court finds as a fact that applications for admission *pro hac vice* are granted as a matter of course in the Eastern District and further finds that Frazier would not be denied admission on this basis if he complied with Rule 21.5. *See also United States v. Dinitz*, 538 F.2d 1214 (5th Cir.1976) (en banc); *In re Evans*, 524 F.2d 1004 (5th Cir.1975) (*Dinitz* and *Evans* both concern the scope of a trial judge's discretion in granting or denying applications for *pro hac vice* appearance). The impact of the restriction in Rule 21.2 is thus quite unlike the durational residency requirements invalidated in *Shapiro* and *Maricopa*. Here, Frazier is not "irretrievably foreclosed" from appearing before the Eastern District; he need only comply with certain additional procedures which serve quite legitimate interests in ensuring that counsel is locally available to the court and in assuring that the attorney has the requisite ethical integrity. *Cf. Sosna v. Iowa*, 419 U.S. 393, 406, 95 S.Ct. 553, 560, 42 L.Ed.2d 532 (1975) (the one-year durational residency requirement for bringing a divorce action did not impermissibly impinge on the right of interstate travel because the party could ultimately attain access to the Iowa courts). More-

9. Under Rule 21.5, the visiting attorney must (1) attach a certificate of good standing, (2) state under oath whether any disciplinary or criminal charges have been instituted against him, and (3) associate local counsel.

over, any hardship occasioned by the requirement that local counsel be associated can be relieved by obtaining a waiver of that requirement. *See Lefton v. City of Hattiesburg,* 333 F.2d 280, 285 (5th Cir. 1964); *Eastern District of Louisiana Local Rule* 21.6. The Court therefore concludes that Rule 21.2 does not impose a penalty upon the right of interstate travel and will not apply strict scrutiny on that basis.

There being no basis for strict scrutiny in this case, the question next arises as to whether an intermediate level of scrutiny should be applied. A classification must be tested under the intermediate scrutiny standard when the line drawn gives rise to recurring constitutional difficulties. *Plyler v. Doe,* 457 U.S. 202, 217, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786 (1982); *Cleburne Living Center,* 726 F.2d at 196. The Supreme Court has observed that it employs this standard "[o]nly when concerns sufficiently absolute and enduring can be clearly ascertained from the Constitution and our cases." *Plyler,* 457 U.S. at 218 n. 16, 102 S.Ct. at 2395 n. 16. If intermediate scrutiny is appropriate, then the classification must serve important governmental objectives and must be substantially related to the achievement of those objectives. *E.g., Cleburne Living Center,* 726 F.2d at 196.

Whether intermediate scrutiny should be applied in the instant case is not free from doubt. On the one hand, classifications pertaining to residency have given rise to constitutional difficulty. *Shapiro* and *Maricopa* invalidated durational residence requirements limiting access to vital governmental services. In *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), the Supreme Court struck down as violative of the Privileges and Immunities Clause an Alaskan requirement that residents must be hired in the oilfield before nonresidents. More recently, the Supreme Court held that another Alaska statute, one which allocated a state bonus according to length of residency, could not withstand even deferential review under the Equal Protection Clause. *See Zobel v. Williams,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); *see also Service Machine & Shipbuilding Corp. v. Edwards,* 617 F.2d 70 (5th Cir.1980) (the court held that a parish ordinance requiring nonresident workers to obtain an identification card at a cost of ten dollars impermissibly burdened interstate commerce).[10] Perhaps "concerns sufficiently absolute and enduring" can be ascertained from these decisions. Yet, on the other hand, the Supreme Court has repeatedly rejected in summary fashion constitutional challenges to state practice regulations linked to residency.[11] These summary rejections provide strong support

10. The Fifth Circuit did not address the merits of the nonresident workers' equal protection challenge and the case therefore has no direct relevance here.

11. *See Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (summary per curiam reversal of due process challenge to denial of application for a *pro hac vice* appearance); *Wilson v. Wilson,* 430 U.S. 925, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977) *summarily aff'g* 416 F.Supp. 984 (D.Ore.1976) (the three-judge district court held that the state could require a bar applicant to express an intent to be a resident of the state at the time of admission without penalizing the right of interstate travel and without contravening equal protection interests); *Norfolk & Western R. Co. v. Beatty,* 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381 (1975), *summarily aff'g* 400 F.Supp. 234 (S.D.Ill.) (state restrictions on participation by out-of-state counsel); *Brown v. Su-*

*preme Court of Virginia,* 414 U.S. 1034, 94 S.Ct. 534, 38 L.Ed.2d 327 (1973), *summarily aff'g* 359 F.Supp. 549 (E.D.Va.) (the three-judge district court, one judge dissenting, rejected an equal protection challenge to a Virginia requirement that attorneys admitted by reciprocity without examination must become Virginia residents); *Suffling v. Bondurant,* 409 U.S. 1020, 93 S.Ct. 460, 34 L.Ed.2d 312 (1972), *summarily aff'g* 339 F.Supp. 257 (D.N.M.) (the three-judge court, one judge dissenting, rejected an equal protection challenge to a rule requiring six months residence in the state prior to admission to the bar for purposes of evaluation); *Martin v. Walton,* 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961), *dismissing for want of a substantial federal question the appeal from* 187 Kan. 473, 357 P.2d 782 (1960) (Kansas could require resident attorneys who regularly engaged in practice out of state to associate local counsel when appearing in Kansas).

for the contention that regulation of the legal profession on lines drawn according to residency do not present recurring constitutional difficulties and that deferential scrutiny should therefore be applied.

The Court need not determine whether intermediate, as opposed to deferential, scrutiny should properly be applied in the instant case. The distinction between the two standards does not become a material one here because Rule 21.2 withstands the higher standard of review. That is, Rule 21.2 serves important governmental objectives and it adopts means that are substantially related to the achievement of those objectives.

Rule 21.2 serves at least one important governmental objective, the efficient administration of justice. Frazier seeks to characterize this interest as a concern merely for administrative convenience. Yet more is involved in the efficient operation of a court system than the mere convenience of judges and court personnel. Delays in litigation delay, and sometimes completely deny, justice to one or more of the parties. With delay comes additional expense for all of the parties. Moreover, all who seek the court's services must suffer when the smooth flow of justice is obstructed. In a society such as ours, which places a high value on judicial vindication of individual rights, "the just, *speedy*, and *inexpensive* determination of every action" [12] must stand as an important governmental objective.

United States District Judges Veronica D. Wicker and Morey L. Sear, both judges of the Eastern District of Louisiana, testified regarding the effect of general admission of nonresident attorneys on the efficient administration of justice. Judge Wicker was qualified and admitted as an expert in judicial administration. Prior to her appointment to the district court bench, she served as a United States Magistrate in this district and also served for a number of years as a clerk to an active judge of the Eastern District. Judge Sear was also qualified and admitted as an expert in judi-cial administration. In the past, he worked with Judge Alvin B. Rubin of the Fifth Circuit Court of Appeals in formulating methods for judicial case management. He has taught at the Federal Judicial Center since 1971 and has participated in numerous seminars on case management in federal district courts.

The testimony of Judges Wicker and Sear establishes that general admission of nonresident attorneys can impede the efficient administration of justice. The relative unavailability of nonresident counsel seriously impairs the administration of justice when quick action is necessary. The defendant judges summarized many of the difficulties posed by the unavailability of nonresident counsel in their answer, and Judges Wicker and Sear confirmed these assertions in their testimony:

"It is not a rarity in the District Court that in Jones Act cases, as well as in other types of civil litigation, a Rule (30)(b)(2), FRCP, notice may issue for the emergency deposition of an important witness aboard a vessel temporarily present, say, in Bremen, West Germany or Brisbane, Australia, etc., with counsel for either party being nonresident requiring an emergency conference under Rule 30(b)(3), FRCP, or an emergency conference pursuant to Rule 26(c), FRCP. Many other discovery emergencies arise. Immediate non-availability of counsel defeats due process need[ed] for such emergency proceedings.

"Emergencies also frequently arise under Rule 65(b), FRCP, in the issuance of temporary restraining orders. It has been the practice of the District Court in most injunction case instances to require at least an informal, immediate chambers conference with the parties' attorneys before issuance of a temporary restraining order. This cannot be accomplished if a party's attorney is in Idaho or California. It is also respondents' uniform experience that these and many other emergen-

---

12. Fed.R.Civ.P. 1 (emphasis added).

cy matters cannot possibly be handled always by telephone or correspondence. "Production and inspection of documents pursuant to Rule 34 FRCP, would be unnecessarily difficult and in many instances prejudicially and expensively delayed if there is no local counsel to respond.

"In sum, the requirements of Rule 5(b), FRCP, and other requirements as to notice, are defeated if a 'party' is not conveniently located within the geographical jurisdiction of the District Court. The emergency and short notice holdings of a plethora of proceedings affecting litigation and the District Court's dockets occur daily and frequently and would be made impossible in most instances if attorneys at interest are not locally available."

The two judges further testified that scheduling routine court matters is also exceedingly difficult when nonresident counsel are involved. Nonresident counsel are present in the district only rarely and thus must of necessity seek either preferential scheduling or exceptions from required appearances. These difficulties unduly complicate case management, particularly in criminal matters, where speedy trial rights are involved.

The means chosen by the Eastern District to alleviate these difficulties are not unduly restrictive. Some decisions have indicated that a court may exclude nonresident attorneys from general admission altogether. *See Aronson v. Ambrose,* 479 F.2d 75 (3rd Cir.1973); *Wilson,* 416 F.Supp. at 987; *Brown,* 359 F.Supp. at 555, 561–62. Yet Local Rule 21.2 requires only that a nonresident attorney admitted to practice in Louisiana must establish an office in Louisiana in order to qualify for admission to the Eastern District bar. Fulfilling this requirement makes the nonresident attorney more available to the court, as well as to litigants and their counsel.[13] This increased availability of the attorney would mitigate some of the impediments to the

efficient administration of justice posed by general admission of nonresident attorneys.

Significantly, Frazier relies upon two opinions which in fact support the view that a court can properly require a nonresident attorney to open a local office as a prerequisite to general admission to the bar. In *Stalland v. South Dakota Board of Examiners,* 530 F.Supp. 155 (D.S.D. 1982), Chief Judge Bogue held that South Dakota could not bar nonresidents from general practice in its court. Yet Chief Judge Bogue and Judges Bownes and Coffin in *Piper* all were of the opinion that a court might require a nonresident to maintain a local office in order to facilitate availability for court. *See Piper,* 723 F.2d at 117 (opinion of two judges of an equally divided court sitting *en banc* ); *Stalland,* 530 F.Supp. at 161. That is precisely the requirement that the Eastern District has established for general admission of nonresident attorneys. The Court can find no pertinent authority that would hold this particular requirement to be impermissible.

Furthermore, it is no criticism of Rule 21.2 that, under its terms, a resident attorney need not open a local office to obtain admission to the Court's bar. The Court did not adopt the rule in a vacuum. That a resident attorney with a practice of any import must of necessity open an office is abundantly clear. Requiring resident attorneys to open an office in Louisiana, therefore, would be almost wholly superfluous. In the rare situation where a resident attorney does not have an office, the attorney is nonetheless locally available to a greater extent than is the case with most nonresident attorneys. His admission does not raise the same concern for the efficient administration of justice that admission of nonresident attorneys does.

■ The Court therefore concludes that requiring nonresident attorneys to open a local office as a prerequisite to general admission is a means that is substantially related to the important governmental ob-

---

**13.** Presumably, a nonresident attorney or firm with a Louisiana office would have to practice in Louisiana with some regularity in order to make the office profitable.

jective of promoting the efficient administration of justice. Rule 21.2 does not deprive Frazier of the equal protection of the laws.

*Privileges and Immunities*

■ Frazier has mounted his most strenuous attack on Rule 21.2 under the Privileges and Immunities Clause.[14] He insists that a functional analysis of the scope of the clause requires us to conclude that the practice of law is a fundamental right. This clause was adopted to promote comity among the several states; it is highly unlikely that it limits the rule-making power of the federal judiciary. *See Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 145 (1st Cir.1976); *United States v. Barnett*, 330 F.2d 369, 388 (5th Cir.1963); *Duehay v. Acacia Mutual Insurance Co.*, 105 F.2d 768, 775 (D.C.Cir.1939); *Lung v. O'Cheskey*, 358 F.Supp. 928, 931 (D.N.M.), *summarily aff'd.* 414 U.S. 802, 94 S.Ct. 159, 38 L.Ed.2d 39 (1973). But even if the clause does apply here, either directly or indirectly as a component of Fifth Amendment due process, Rule 21.2 passes muster.

■ In applying the Privileges and Immunities Clause, a court must first determine whether the interest asserted by the out-of-state resident is sufficiently fundamental to the promotion of interstate harmony so as to fall within the purview of the clause. If the privilege or immunity is subject to protection under the clause, the next inquiry concerns whether there is a "substantial reason" for discriminating against nonresidents and whether the discrimination actually imposed "bears a close relation" to the supporting reason or reasons. *United Building and Construction Trades Council v. Camden*, — U.S. —, ———, 104 S.Ct. 1020, 1027–30, 79 L.Ed.2d 249 (1984).

■ Here, it is extremely dubious that Frazier's interest in practicing in federal court in Louisiana is fundamental to, or even remotely relevant to, the promotion of interstate harmony. Surely, Frazier would

not suggest that Mississippi would view the action of a federal court sitting in Louisiana as an affront to the comity exercised between Louisiana and Mississippi. The point is not a critical one, however. The foregoing equal protection analysis establishes that the unrestricted general admission of nonresident attorneys to the Eastern District bar impairs the efficient administration of justice. Thus, there is a "substantial reason" to treat nonresident attorneys differently than resident attorneys. The discrimination imposed, the requirement that nonresident attorneys open a Louisiana office, bears a close relation to this substantial reason because it alleviates the problems presented by general admission of nonresident attorneys without greatly restricting the ability of those attorneys to practice before the Court. The Court therefore concludes that Rule 21.2 would not violate the Privileges and Immunities Clause if it were applicable. *Accord Piper*, 723 F.2d at 117 (opinion of two judges of an equally divided court sitting en banc); *Stalland*, 530 F.Supp. at 161.

*Freedom of Association and Expression*

■ Plaintiff lastly contends that relegating him to *pro hac vice* admission, which requires him to associate local counsel, has a "chilling effect" on his freedom of association, expression and representation in the Eastern District. This Court has already found as a fact that Frazier would not be denied *pro hac vice* admission if he complied with Rule 21.5. Thus, Frazier could not argue with any force that the Eastern District Rules in fact *deprive* him of his first amendment freedoms. The most that can be said is that the Rules place an incidental burden on the exercise of these freedoms by restricting the manner in which they are exercised. This incidental burden will not violate the first amendment if it operates without regard to the content of the expression or the character of the association and it serves significant governmental interests. *Cf. Heffron v. International Society for Krishna Con-*

14. U.S. Const., Art. IV, § 2, cl. 1.

*sciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (time, place and manner restriction on distribution of material at a state fairgrounds).

■ That Rules 21.2 and 21.5 operate without regard to the content of expression or the character of association is clear. On their face, the Eastern District Rules do not restrict the appearance of out-of-state counsel on the basis of the beliefs they seek to espouse or upon the character of their associations. This Court finds as a fact that the Eastern District judges do not apply the Rules in a manner which discriminates against attorneys because of their beliefs or associations. The district judges do not have unbridled discretion in this regard. The Fifth Circuit is ever vigilant in ensuring that local rules do not operate with such an improper effect. *See, e.g., Sanders v. Russell*, 401 F.2d 241 (5th Cir. 1968) (the court invalidated district court restrictions on *pro hac vice* admission that severely impaired the ability of Negroes to obtain attorneys for civil rights claims).

The rules are also reasonable in light of the significant governmental interests involved. This Court has discussed at length, in regard to Frazier's equal protection challenge, the reasonableness of restrictions imposed by Rule 21.2 on the manner of a nonresident attorney's appearance in the Eastern District. Rule 21.5 is a fitting complement to Rule 21.2. Rule 21.5 serves the goal of promoting the efficient administration of justice by requiring the association of an attorney who is locally available to the Court. The Rule further serves the goal of assuring the professional integrity of the attorneys that practice before the Court by requiring the applicant for *pro hac vice* admission to file a certificate of good standing and report on any disciplinary or criminal proceedings brought against him. These minimal restrictions on a nonresident's freedom of expression and association in the Eastern District are amply justified by the significant governmental interests served.

*Conclusion*

Frazier's challenges to the Eastern District's limitations on admission of nonresident attorneys under the Commerce Clause, the Full Faith and Credit Clause, the equal protection component of the Due Process Clause, the Privileges and Immunities Clause, and the first amendment all fall short of the mark. Accordingly, his petition for injunctive and other extraordinary relief is DENIED and his suit will be DISMISSED on the merits and with prejudice.

It is appropriate to make this personal observation. Mr. Frazier and counsel for both sides have outlined their positions admirably, with a clarity that has been immensely useful. All have revealed their highest respect for the judicial institutions to which they are so obviously dedicated.