# FRAZIER *v.* HEEBE, CHIEF JUDGE, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, ET AL.

No. 86–475.   Argued April 29, 1987—Decided June 19, 1987

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined. REHN-QUIST, C. J., filed a dissenting opinion, in which O'CONNOR and SCALIA, JJ., joined, *post*, p. 651.

*Cornish F. Hitchcock* argued the cause for petitioner. With him on the briefs were *Alan B. Morrison* and *Gary L. Roberts.*

*Curtis R. Boisfontaine* argued the cause and filed a brief for respondents.*

JUSTICE BRENNAN delivered the opinion of the Court.

The question for decision is whether a United States District Court may require that applicants for general admission

---

*\*Lawrence A. Salibra II* filed a brief for the American Corporate Counsel Association as *amicus curiae* urging reversal.

to its bar either reside or maintain an office in the State where that court sits.

## I

Petitioner David Frazier is an attorney having both his residence and his law office in Pascagoula, Mississippi. An experienced litigator, he is a member of the Mississippi and Louisiana State Bars, and also of the Bars of the United States Courts of Appeals for the Fifth and Eleventh Circuits and the United States District Court for the Southern District of Mississippi. In April 1982, Frazier applied for admission to the Bar of the United States District Court for the Eastern District of Louisiana. His application was denied because he neither lived nor had an office in Louisiana, as required by the court's local Rule 21.2. In addition, Frazier was ineligible for admission under the court's local Rule 21.3.1, which requires continuous and uninterrupted Louisiana residence or maintenance of a Louisiana law office for continuing eligibility in that bar.

Frazier challenged these District Court Rules by petitioning for a writ of prohibition from the Court of Appeals for the Fifth Circuit. The petition alleged that the restrictions in Rules 21.2 and 21.3.1 were unconstitutional, on their face and as applied to him. The Court of Appeals did not rule on the petition, but remanded the case to the District Court for the Eastern District for appropriate proceedings and entry of an appealable judgment. All the judges of the Eastern District recused themselves. The matter was assigned to Judge Edwin Hunter, a Senior Judge of the Western District of Louisiana. The District Court held a 1-day bench trial in which two District Court Judges, two Magistrates, and the Clerk of the Eastern District testified in support of the challenged Rules.

Frazier challenged the District Court Rules on several constitutional grounds, primarily under the equal protection requirement of the Due Process Clause of the Fifth Amend-

ment.[1]   Applying the standard of intermediate scrutiny, the District Court upheld Rule 21.2 as constitutional.[2]   594 F. Supp. 1173, 1179 (1984).

The District Court found that the Rule serves the important Government objective of the efficient administration of justice.   *Ibid.*   It relied on testimony by court officials that proximity to the New Orleans courthouse is important when emergencies arise during proceedings, and that participation by nonresident attorneys complicates the scheduling of routine court matters.   *Id.*, at 1183–1184.   The court also found that the office requirement is not unduly restrictive and that it increases the availability of an attorney to the court.   Finally, it stated the failure to require in-state attorneys to open a local office was reasonable, since such attorneys "must of necessity open an office," and, even absent an office, an in-state attorney is likely to be available.   *Ibid.*   Without further explanation, the court declared that the in-state attorney's admission to the bar "does not raise the same concern for the efficient administration of justice that admission of nonresident attorneys does."   *Ibid.*   After reviewing petitioner's other claims, the District Court denied Frazier's petition for extraordinary relief and dismissed his suit.

The Court of Appeals affirmed over a dissent.   788 F. 2d 1049 (1986).   The court found that the discrimination at issue did not warrant heightened scrutiny, and held that the

---

[1] Petitioner also contended that the local Rules violated the Commerce Clause, the Full Faith and Credit Clause, the Privileges and Immunities Clause, and the First and Fourteenth Amendments of the Federal Constitution.

[2] In determining the level of review appropriate for the federal equal protection challenge, the court determined that no fundamental constitutional right was implicated and that Frazier was not a member of a suspect class.   The court therefore concluded that strict scrutiny was unnecessary. The court did not determine whether intermediate or deferential scrutiny was required for classifications based on state residency, because it concluded that, even under intermediate scrutiny, Rule 21.2 was constitutional.   594 F. Supp. 1173, 1180–1182 (1984).

exclusion was rationally related to the District Court's goal of promoting lawyer competence and availability for hearings. It characterized the testimony before the District Court as "of one voice: lawyers admitted *pro hac vice*, who neither reside nor maintain an office in Louisiana, fail to comply with the local rules and impede the efficient administration of justice more than members of the bar of the Eastern District." *Id.*, at 1054. The court also noted that out-of-state attorneys were not unduly disadvantaged by this restriction, since they could affiliate with Louisiana counsel and appear *pro hac vice. Id.*, at 1054—1055. Finally, the court denied petitioner's alternative request to invalidate these Rules through use of the Court of Appeals' supervisory power over District Courts in that Circuit. The court expressed its reluctance to exercise its supervisory authority because the Fifth Circuit Judicial Council was at that time reviewing the local Rules of the District Courts in the Circuit. *Id.*, at 1055.

We granted certiorari, 479 U. S. 960 (1986), and now reverse. Pursuant to our supervisory authority, we hold that the District Court was not empowered to adopt its local Rules to require members of the Louisiana Bar who apply for admission to its bar to live in, or maintain an office in, Louisiana where that court sits. We therefore need not address the constitutional questions presented.

## II

We begin our analysis by recognizing that a district court has discretion to adopt local rules that are necessary to carry out the conduct of its business. See 28 U. S. C. §§ 1654, 2071; Fed. Rule Civ. Proc. 83. This authority includes the regulation of admissions to its own bar. A district court's discretion in promulgating local rules is not, however, without limits. This Court may exercise its inherent supervisory power to ensure that these local rules are consistent with "'the principles of right and justice.'" *In re Ruffalo*, 390 U. S. 544, 554 (1968) (WHITE, J., concurring) (citation omit-

ted); see *In re Snyder,* 472 U. S. 634, 643 (1985); *Theard* v. *United States,* 354 U. S. 278, 282 (1957); *Ex parte Burr,* 9 Wheat. 529, 530 (1824).[3] Section 2071 requires that local rules of a district court "shall be consistent with" the "rules of practice and procedure prescribed by the Supreme Court."[4] Today we invoke our supervisory authority to prohibit arbitrary discrimination against members of the Louisiana Bar, residing and having their office out-of-state, who are otherwise qualified to join the Bar of the Eastern District.

In the present case, our attention is focused on the requirements imposed by Rule 21.2 of the Eastern District of Louisiana,[5] namely that, to be admitted to the bar, an attorney must reside or maintain an office in Louisiana. Respondents assert that these requirements facilitate the efficient administration of justice, because nonresident attorneys allegedly are less competent and less available to the court than resident attorneys. We disagree. We find both requirements to be unnecessary and irrational.

Rule 21.2's requirement of residence in Louisiana arbitrarily discriminates against out-of-state attorneys who have passed the Louisiana bar examination and are willing to pay the necessary fees and dues in order to be admitted to the Eastern District Bar. No empirical evidence was introduced

---

[3] See also Flanders, Local Rules in Federal District Courts: Usurpation, Legislation, or Information, 14 Loyola (LA) L. Rev. 213, 252–256 (1981); Martineau, The Supreme Court and State Regulation of the Legal Profession, 8 Hastings Const. L. Q. 199, 234–236 (1981); Note, The Supervisory Power of the Federal Courts, 76 Harv. L. Rev. 1656, 1656–1657 (1963).

[4] Section 2072 confirms the supervisory authority that the Court has over lower federal courts: "The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions. . . ." 28 U. S. C. § 2072. The local rules must also be consistent with Acts of Congress. 28 U. S. C. § 2071. Congress thus far has chosen to leave regulation of the federal bars to the courts.

[5] Petitioner does not challenge the requirement of Rule 21.2 that an attorney must be a member in good standing of the Louisiana Bar.

at trial to demonstrate why this class of attorneys, although members of the Louisiana Bar, should be excluded from the Eastern District's Bar.[6]  Instead, the evidence was limited almost exclusively to experiences with *pro hac vice* practitioners, who unlike petitioner, were not members of the Louisiana Bar. Tr. 153.  Experience with this category of one-time or occasional practitioners does not provide a basis for predicting the behavior of attorneys, who are members of the Louisiana Bar and who seek to practice in the Eastern District on a regular basis.

Indeed, there is no reason to believe that nonresident attorneys who have passed the Louisiana bar examination are less competent than resident attorneys.  The competence of the former group in local and federal law has been tested and demonstrated to the same extent as that of Louisiana lawyers, and its members are equally qualified.  We are unwilling to assume that "a nonresident lawyer—any more than a resident—would disserve his clients by failing to familiarize himself [or herself] with the [local] rules." *Supreme Court of New Hampshire* v. *Piper*, 470 U. S. 274, 285 (1985).[7]  The

---

[6] During the bench trial, there was only one occasion when a witness, testifying in favor of the local Rules, distinguished between nonresident members of the Louisiana Bar and *pro hac vice* practitioners.  In that instance, the witness could offer anecdotal testimony about only two nonresident members of the Louisiana Bar.  Tr. 214–215 (testimony of Magistrate Wynne).

[7] In *Supreme Court of New Hampshire* v. *Piper*, 470 U. S. 274 (1985), the Court held that a Rule by a State Supreme Court that limited bar admission to state residents violated the Privileges and Immunities Clause of Art. IV, § 2.  In the context of that case, the Court considered several contentions quite similar to those presented here.  The Court rejected the notion that nonresident attorneys should be presumed to be less competent or less available than resident attorneys.  470 U. S., at 285–286.  We held that a State may discriminate against nonresident attorneys only where its reasons are substantial and the difference in treatment bears a close relationship to those reasons.

Rules that discriminate against nonresident attorneys are even more difficult to justify in the context of federal-court practice than they are in the

Court has previously recognized that a nonresident lawyer is likely to have a substantial incentive, as a practical matter, to learn and keep abreast of local rules. *Ibid.* A lawyer's application to a particular bar is likely to be based on the expectation of considerable local practice, since it requires the personal investment of taking the state bar examination and paying fees and annual dues. Moreover, other more effective means of ensuring the competence of bar members are available to the district courts, including examination or seminar attendance requirements. Complete exclusion is unnecessary.

We also do not believe that an alleged need for immediate availability of attorneys in some proceedings requires a blanket rule that denies all nonresident attorneys admission to a district-court bar. If attorney availability is a significant problem, the Rules are poorly crafted to remedy it. For example, the Rules presume that a lawyer in Shreveport, Louisiana, which is located more than 300 miles from the New Orleans courthouse of the Eastern District, is more likely or able to attend a conference than a lawyer such as petitioner, who is only 110 miles away, but must cross a state boundary on his way to the court. As a practical matter, a high per-

---

area of state-court practice, where laws and procedures may differ substantially from State to State. See Comisky & Patterson, The Case for a Federally Created National Bar by Rule or by Legislation, 55 Temp. L. Q. 945, 960–964 (1982). There is a growing body of specialized federal law and a more mobile federal bar, accompanied by an increased demand for specialized legal services regardless of state boundaries. See Simonelli, State Regulation of a Federal License to Practice Law, 56 N. Y. State Bar J. 15 (May 1984). The Court's supervisory power over federal courts allows the Court to intervene to protect the integrity of the federal system, while its authority over state-court bars is limited to enforcing federal constitutional requirements. Because of these differences, the Court has repeatedly emphasized, for example, that disqualification from membership from a state bar does not necessarily lead to disqualification from a federal bar. See *Theard* v. *United States*, 354 U. S. 278, 282 (1957); *Selling* v. *Radford*, 243 U. S. 46, 49 (1917); cf. *Sperry* v. *Florida ex rel. Florida Bar*, 373 U. S. 379, 385–387 (1963).

centage of nonresident attorneys willing to take the state bar examination and pay the annual dues will reside in places "reasonably convenient" to the District Court. Cf. 470 U. S., at 286–287. Moreover, modern communication systems, including conference telephone arrangements, make it possible to minimize the problem of unavailability. Finally, district courts have alternative means to ensure prompt attendance at important conferences. For instance, they may impose sanctions on lawyers who fail to appear on schedule. Indeed, the Eastern District has adopted Rule 21.8.1, which specifically requires that sanctions be imposed on lawyers who fail to appear at hearings.[8] We therefore conclude that the residency requirement imposed by the Eastern District is unnecessary and arbitrarily discriminates against out-of-state attorneys.

Similarly, we find the in-state office requirement unnecessary and irrational. First, the requirement is not imposed on in-state attorneys. A resident lawyer is allowed to maintain his or her only office outside of Louisiana. A resident lawyer with an out-of-state office is equally as unavailable to the court as a nonresident lawyer with an out-of-state office. In addition, the mere fact that an attorney has an office in Louisiana surely does not warrant the assumption that he or she is more competent than an out-of-state member of the state bar. Requiring petitioner to have a Louisiana address and telephone number, and an in-state answering service will not elevate his or her understanding of the local Rules. As the failure to require in-state attorneys to have an in-state office reveals, the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court.

---

[8] Furthermore, the Court noted in *Piper* that "[t]he trial court, by rule or as an exercise of discretion, may require any lawyer who resides at a great distance to retain a local attorney who will be available for unscheduled meetings and hearings." 470 U. S., at 287.

We further conclude that any need the court may have to ensure the availability of attorneys does not justify the in-state office requirement. As observed with regard to state residency requirements, there is no link between residency within a State and proximity to a courthouse. The office requirement does not specify that counsel *be* in the Eastern District, but only that the attorney have an office somewhere in the State, regardless of how far that office is from the courthouse.[9] Thus, we conclude that neither the residency requirement nor the office requirement of the local Rules is justified.[10]

Respondents contend that nonresident lawyers are not totally foreclosed from Eastern District practice because they can appear *pro hac vice*. In *Piper*, however, we recognized that this alternative does not allow the nonresident attorney to practice "on the same terms as a resident member of the bar." 470 U. S., at 277, n. 2. An attorney not licensed by a district court must repeatedly file motions for each appearance on a *pro hac vice* basis. 594 F. Supp., at 1177. In addition, in order to appear *pro hac vice* under local Rule 21.5, a lawyer must also associate with a member of the Eastern District Bar, who is required to sign all court documents.[11] 594 F. Supp., at 1177. This association, of course, imposes a financial and administrative burden on nonresident counsel.[12]

---

[9] For example, if a lawyer in Port Arthur, Texas, opened a branch office just across the state line in Lake Charles, Louisiana, he or she could join the Eastern District Bar even though that office was twice as far from the courthouse in New Orleans as is petitioner's office.

[10] Under Rule 21.3.1, a lawyer must maintain an in-state residence or office not only at the time of admission, but also for as long as the lawyer desires to remain a member of the Eastern District Bar. This Rule serves only to extend the unfairness of Rule 21.2. We therefore also find this local Rule to be unnecessary and irrational.

[11] Under Rule 21.6, a District Court may grant a waiver of local-counsel association only if it would be a hardship for an out-of-state client.

[12] From the lawyer's standpoint, he or she will be at a significant disadvantage in attracting clients. Clients would have to be willing to provide

Furthermore, it is ironic that "local" counsel may be located much farther away from the New Orleans courthouse than the out-of-state counsel. Thus, the availability of appearance *pro hac vice* is not a reasonable alternative for an out-of-state attorney who seeks general admission to the Eastern District's Bar.[13]

*Reversed.*

CHIEF JUSTICE REHNQUIST, with whom JUSTICE O'CONNOR and JUSTICE SCALIA join, dissenting.

We have previously held that this Court may, in the exercise of its "supervisory authority," modify or reverse judgments of lower federal courts in accordance with principles derived neither from the United States Constitution nor from any Act of Congress. *United States* v. *Hasting,* 461 U. S. 499, 505 (1983); *Cupp* v. *Naughten,* 414 U. S. 141, 146 (1973). Such a power, we have reasoned, inheres in any appellate court called upon "to review proceedings of trial courts and to reverse judgments of such courts which the appellate court concludes were wrong." *Ibid.* In the present case the Court expands the notion of supervisory authority to allow it to review and revise local Rules of a District Court that regulate admission to the bar of that court. But it does not follow from the fact that we may reverse or modify a judgment of

---

compensation for the necessary association with a local lawyer who will duplicate the principal lawyer's efforts. The effect of such a rule is to drive up the cost of litigation and to steer business almost exclusively to the in-state bar. A client may have a number of excellent reasons to select a nonlocal lawyer: his or her regular lawyer most familiar with the legal issues may be nonlocal; a nonresident lawyer may practice a specialty not available locally; or a client may be involved in an unpopular cause with which local lawyers are reluctant to be associated. See *Piper,* 470 U. S., at 281.

[13] Furthermore, in many District Courts the decision on whether to grant *pro hac vice* status to an out-of-state attorney is purely discretionary and therefore is not a freely available alternative. See *Supreme Court of New Hampshire* v. *Piper, supra,* at 277, n. 2; *Leis* v. *Flynt,* 439 U. S. 438, 442 (1979).

another federal court which we believe to be wrong that we may set aside a rule promulgated by that court governing admission to its own bar on a similar basis.

Congress has provided in 28 U. S. C. § 2071 that the district courts may prescribe rules for the conduct of their business.[1] It is clear from 28 U. S. C. § 1654 that the authority provided in § 2071 includes the authority of a district court to regulate the membership of its bar.[2] See *United States* v. *Hvass*, 355 U. S. 570, 575 (1958). Neither these sections nor Federal Rule of Civil Procedure 83,[3] which also governs the rulemaking power of district courts, gives any intimation that this Court possesses "supervisory power" over rules adopted in accordance with these provisions. Indeed, the history of these provisions demonstrates the broad discretion possessed by district courts in promulgating their own rules. At one

---

[1] Section 2071 provides:

"The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

[2] Section 1654 provides:

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

[3] Federal Rule of Civil Procedure 83 provides:

"Each district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, make and amend rules governing its practice not inconsistent with these rules. A local rule so adopted shall take effect upon the date specified by the district court and shall remain in effect unless amended by the district court or abrogated by the judicial council of the circuit in which the district is located. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public. In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act."

time former Equity Rule 79 required that district court rules be made "[w]ith the concurrence of a majority of the circuit judges for the circuit," but that restriction was abolished by former 28 U. S. C. § 731 (1940 ed.), which provided the basis for Federal Rule of Civil Procedure 83. And no enabling Act has ever required the approval of this Court, or a majority of the Justices thereof, for the promulgation of district court rules.

The Court finds that the Rules Enabling Act, 28 U. S. C. § 2072, "confirms" its power to decide whether local rules are rational and necessary. *Ante*, at 646, n. 4. That Act, however, has heretofore been regarded as statutory authorization for this Court's promulgation of rules of procedure itself, and not as a grant of power to review the wisdom of rules adopted by a district court in default of any action by this Court. See, *e. g., Burlington Northern R. Co.* v. *Woods,* 480 U. S. 1, 5, n. 3 (1987); *Hanna* v. *Plumer,* 380 U. S. 460, 463–466, 471–474 (1965).

To the extent that the Rules Enabling Act can be viewed as "confirming" this Court's power to review the wisdom of district court rules, Federal Rule of Civil Procedure 83 suggests that this Court has apparently relinquished that power to the Judicial Councils of the Circuits. Rule 83, as recently amended in 1985, provides detailed procedures governing the adoption and amendment of district court rules. Under these procedures, a district court may make and amend rules by action of a majority of the judges of the court after notice and an opportunity for comment by the public are provided. The district court rules shall *"remain in effect* unless amended by the district court or abrogated by the judicial council of the circuit in which the district is located." Fed. Rule Civ. Proc. 83 (emphasis added). If there were a role for this Court to entertain ad hoc challenges to district court rules on the basis of necessity or rationality alone, one would

think that it would have been provided for in the orderly procedures of Rule 83.[4]

Unquestionably the rule of a district court relating to membership in its bar may not violate the United States Constitution and must conform to any Act of Congress conferring authority in that respect. One denied admission to the bar by a rule which violates either the Constitution or an applicable statute may of course obtain review of that decision in this Court, and a reversal of the decision if his claims are well founded. But today's decision rests upon no such grounds.[5]

Prior cases addressing challenges to the validity of local rules have confined their analyses to four inquiries: whether the rule conflicts with an Act of Congress; whether the rule conflicts with the rules of procedure promulgated by this Court; whether the rule is constitutionally infirm; and whether the subject matter governed by the rule is not within the power of a lower federal court to regulate. See, *e. g.*, *Colgrove* v. *Battin*, 413 U. S. 149, 159–160, 162–164 (1973); *Miner* v. *Atlass*, 363 U. S. 641, 651–652 (1960); *Story* v. *Liv-*

---

[4] As noted by the Court, the Court of Appeals for the Fifth Circuit rejected petitioner's request to exercise its authority under Rule 83 to invalidate local Rules 21.2 and 21.3.1, noting that the Fifth Circuit Judicial Conference is presently reviewing the local rules of the District Courts of the Circuit. In light of this pending review, the Court's action today is particularly disruptive of the procedures established by Rule 83.

[5] The Court declares its prerogative to review district court rules governing bar admission standards to determine whether they are consistent with "the principles of right and justice." *Ante*, at 645. Yet the "law and justice" standard cited by the Court derives from cases in which this Court has reviewed attorney disbarment *decisions* by lower federal courts. See *In re Ruffalo*, 390 U. S. 544, 554 (1968) (WHITE, J., concurring in result); *Theard* v. *United States*, 354 U. S. 278, 282 (1957); *Selling* v. *Radford*, 243 U. S. 46, 51 (1917). The Court is unable to cite an example in which this standard has been used to evaluate the validity of a local rule governing bar admission requirements. Although *Theard* v. *United States, supra,* and *In re Ruffalo, supra,* involved District Court and Court of Appeals rules governing disbarment proceedings, the validity of those rules was not questioned by the Court in those cases.

*ingston,* 13 Pet. 359, 368 (1839). The Court today does not suggest that the local Rules at issue here are invalid for any of these reasons, and instead determines merely that, in its view, the Rules are "unnecessary and irrational." *Ante,* at 646, 650, n. 10.

This newfound and quite unwarranted authority contrasts starkly with the observations of Chief Justice Marshall, writing for the Court in *Ex parte Burr,* 9 Wheat. 529 (1824):

> "Some doubts are felt in this Court respecting the extent of its authority as to the conduct of the Circuit and District Courts towards their officers; but without deciding on this question, the Court is not inclined to interpose, unless it were in a case where the conduct of the Circuit or District Court was irregular, or was flagrantly improper." *Id.,* at 530.

The force behind the Court's reluctance in *Ex parte Burr* to interfere with a lower court's bar membership decision was its recognition that a federal court possesses nearly exclusive authority over such matters. *Id.,* at 531. This recognition is reflected throughout this Court's cases. See, *e. g., Ex parte Secombe,* 19 How. 9, 12–13 (1857); *Ex parte Garland,* 4 Wall. 333, 379 (1867); see also *In re Snyder,* 472 U. S. 634, 643 (1985).

Petitioner contends that the local rules in question here violate the equal protection component of the Due Process Clause of the Fifth Amendment, but the Court, having waved its supervisory wand, finds it unnecessary to address this question. For the reasons stated by the Court of Appeals for the Fifth Circuit, I conclude that the local rules do not classify so arbitrarily or irrationally as to run afoul of the Fifth Amendment Due Process Clause. I would therefore affirm the judgment of the Court of Appeals.