842 F.2d 1393
 Susan Esposito THORSTENN, Lloyd De Vos
v.
Geoffrey W. BARNARD, in his capacity as chairman of the
Committee of Bar Examiners of the Virgin Islands
Bar, and not personally
and
Virgin Islands Bar Association, Defendant-Intervenor.
Appeal of Susan Esposito THORSTENN and Lloyd De Vos.
 Nos. 87-3034, 87-3035.
 United States Court of Appeals,
Third Circuit.
 Argued April 28, 1987.
Decided Sept. 30, 1987.
On Rehearing In Banc Dec. 16, 1987.
Decided March 31, 1988.
 
 Cornish F. Hitchcock (argued), Public Citizen Litigation Group, Washington, D.C., William L. Blum, De Vos & Co., Charlotte Amalie, St. Thomas, V.I., for appellants.
 Maria Tankenson Hodge (argued), Charlotte Amalie, St. Thomas, V.I., for appellee, Barnard.
 Diane Trace Warlick, Law Offices of R. Eric Moore, Christiansted, St. Croix, V.I., for appellee, Virgin Islands Bar Ass'n defendant-intervenor.
 Godfrey R. de Castro, Atty. Gen., Rosalie Simmonds Ballentine, Sol. Gen., Elbert G. Bennett, Michael W.L. McCrory, Asst. Attys. Gen., Dept. of Justice, Charlotte Amalie, St. Thomas, V.I., for amicus curiae the Government of the Virgin Islands.
 Argued April 28, 1987.
 Before SEITZ, HIGGINBOTHAM, and ROSENN, Circuit Judges.
 Rehearing In Banc Dec. 16, 1987.
 Before GIBBONS, Chief Judge, and SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Plaintiffs, Susan Esposito Thorstenn and Lloyd De Vos, appeal the order of the district court granting the defendants' motion for summary judgment and, in effect, denying the plaintiffs' motion for summary judgment. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 
 2
 Thorstenn and De Vos applied for admission to the bar of the Virgin Islands. Thorstenn is a resident of New York; De Vos is a resident of New Jersey. Both are members in good standing of the New York and New Jersey bars.
 
 
 3
 Under the Rules of the District Court of the Virgin Islands, an applicant must live in the Virgin Islands for one year before applying for admission to the bar, and must state his or her intention to reside in the Virgin Islands. 5 V.I.C., App. V, Rule 56(b)(4), (5). Because Thorstenn and De Vos did not comply with these residency requirements, they were denied admission to the Virgin Islands bar.[1]
 
 
 4
 The plaintiffs filed these actions, alleging that the residency requirements of the Virgin Islands violated the privileges and immunities clause of the constitution and seeking to enjoin the enforcement of such rule.[2] Both the plaintiffs and the defendants filed motions for summary judgment with supporting affidavits. Plaintiff De Vos reported that he had not experienced trouble travelling to the Islands. In contrast, Barnard, chairman of the Committee of Bar Examiners, in his affidavit, maintained that travel service between the continental United States and the Virgin Islands was difficult and erratic. The parties also disagreed about the quality of telecommunications between the Islands and the mainland. In view of our disposition of the legal issue presented in this case, however, we do not believe that the parties' disagreement over the ease of travel and communications between the Virgin Islands and the continental United States creates an issue of material fact.[3]
 
 
 5
 The district court granted the defendants' motion for summary judgment on the ground that the unique conditions in the Virgin Islands justified the residency requirements, and thus the requirements did not violate the privileges and immunities clause as applied in Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). In support of this conclusion, the district court relied on the geographical isolation of the Virgin Islands from the continental United States, the delay in publication of local decisions, the case load in the district court, the need to ensure that its lawyers are ethical, and the rule governing the appointment of counsel for indigent criminal defendants. These appeals followed.
 
 
 6
 While these appeals were pending, the Supreme Court of the United States handed down its decision in Frazier v. Heebe, --- U.S. ----, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987). The Court, relying on its supervisory power, invalidated certain attorney residency and office requirements contained in the local rules of the United States District Court for the Eastern District of Louisiana. Because of the established policy favoring a non-constitutional disposition, if possible, we address the applicability of Frazier v. Heebe to this appeal.
 
 
 7
 The petitioner in Frazier was a Mississippi attorney. He applied for admission to the bar of the United States District Court for the Eastern District of Louisiana. His application was rejected because he admittedly did not comply with the provisions of the local rules noted above.
 
 
 8
 The district court and the court of appeals refused to invalidate the local rules. Those courts concluded that the requirements facilitated the efficient administration of justice because nonresident attorneys allegedly are less competent and less available to the court than are resident attorneys. The Supreme Court granted certiorari. Frazier v. Heebe, --- U.S. ----, 107 S.Ct. 454, 93 L.Ed.2d 401 (1986). It thereafter decided that "[p]ursuant to our supervisory authority, we hold that the district court was not empowered to adopt its local rules to require members of the Louisiana bar who apply for admission to its bar to live in or maintain an office in Louisiana where the court sits." 107 S.Ct. at 2611. It found that the reasons given for the residency requirement were unnecessary and irrational.
 
 
 9
 First, the Court stated that no empirical evidence demonstrated why the district court was justified in discriminating against one of two classes of attorneys who were members of the Louisiana bar. The Court went on to say that there is no reason to believe that nonresident attorneys who have passed the Louisiana bar examination are less competent than resident attorneys. 107 S.Ct. at 2612-13. There is no suggestion that the situation is otherwise in the Virgin Islands.
 
 
 10
 The Court next concluded that it did not agree that the alleged need for immediate availability of attorneys in some proceedings requires a blanket rule that denies all nonresident attorneys admission to a district court bar. Id. at 2613. The Court pointed out that improvements in communications minimize the problem of availability, and that alternative resolutions are possible.
 
 
 11
 The Court thereupon held that the residency requirement imposed by the Eastern District was unnecessary and arbitrarily discriminated against out-of-state attorneys.
 
 
 12
 The reasons advanced here by the district court, the appellees and the amicus curiae, the Government of the Virgin Islands, in support of the validity of the local rules for the district court of the Virgin Islands are essentially the same as those rejected for lack of inherent merit in Frazier. Indeed, the district court found that the most compelling reason for excluding nonresidents was the need to have counsel available in criminal cases. The Supreme Court, however, concluded that alternative resolutions of this problem are the answer.
 
 
 13
 We have no doubt that alternative rules could validly be adopted that would impose reasonable requirements on non-resident members of the Virgin Islands bar to assure that they would bear professional responsibilities comparable to those now imposed on resident attorneys. In consequence, non-resident members of the bar would not have a privileged status in the practice of law in the Virgin Islands. We further note that reasonable rules could be adopted to relieve the Government of the Virgin Islands of any undue expenses resulting from the admission of non-resident attorneys.
 
 
 14
 We emphasize that the Court invoked its supervisory power in Frazier v. Heebe. Moreover, we are convinced that the Supreme Court of the United States did not invoke its supervisory power merely to adopt an ad hoc rule for the resolution of the problem presented. Such a view would create the possibility of litigation with respect to every federal district having a residence requirement.
 
 
 15
 We conclude that Frazier must be viewed as generally applicable to the United States district courts. We have no doubt, therefore, that it is binding precedent here unless the status of the District Court of the Virgin Islands dictates otherwise. The District Court of the Virgin Islands is, of course, not a United States district court. It was created by an act of Congress and exercises exclusive federal jurisdiction in that Territory under the Revised Organic Act, 48 U.S.C. Sec. 1612 (1982).
 
 
 16
 Given the integrated status of the Virgin Islands in the federal court system, 28 U.S.C. Secs. 1254, 1291 (1982), we have no doubt that the United States Supreme Court has supervisory authority over the District Court of the Virgin Islands. Under 28 U.S.C. Sec. 2071 (1982), local rules adopted by United States courts, including those of the District Court of the Virgin Islands, must "be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." See also 28 U.S.C. Sec. 2072 (1982). We thus conclude that the Supreme Court's ruling in Frazier v. Heebe requires that we invalidate the provisions of 5 V.I.C., App. V, Rule 56(b)(4), (5) to the extent that they require an applicant to live in the Virgin Islands for one year before applying for admission to the district court bar and to state that it is his or her intention to reside in the Virgin Islands.[4]
 
 
 17
 The appellees argue that the supervisory power should not be exercised to invalidate the residency requirements because the supervisory power is to be used only in unique circumstances, usually criminal cases. This argument, however, is unpersuasive in light of the decision by the Supreme Court to employ its supervisory power to invalidate the residency requirement imposed by the Eastern District of Louisiana. Indeed, the dissent in Frazier focused on whether it was appropriate to rely on the Court's supervisory power in the case. See 107 S.Ct. at 2614-16 (Rehnquist, C.J., dissenting).
 
 
 18
 Moreover, we disagree with the appellees' and the amicus curiae's[5] assertions that the facts in this case dictate a different result than that reached by the Supreme Court. As indicated above, the justifications offered by the district court in this case were essentially the ones rejected in Frazier. Even against the remote possibility that we are not bound to apply Frazier v. Heebe here, we believe that in the exercise of our clearly established supervisory power over the District Court of the Virgin Islands, Government of the Virgin Islands v. Bryan, 818 F.2d 1069 (3d Cir.1987), we would be compelled, by parity of reasoning to that employed in Frazier, to apply our supervisory power, see LaBuy v. Howes Leather Co., 352 U.S. 249, 259-60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), to invalidate the residency requirements in the rules.[6]
 
 
 19
 Accordingly, the judgment of the district court will be reversed and the case remanded with instructions to enter summary judgment in favor of the plaintiffs.
 
 
 20
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting, with whom WEIS, GREENBERG, HUTCHINSON and SCIRICA, Circuit Judges, join:
 
 
 21
 I believe that the majority's reliance on Frazier v. Heebe, --- U.S. ----, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987), is flawed. More than two centuries ago Lord Mansfield, perhaps England's wisest jurist,[1] stressed that
 
 
 22
 [p]recedents only serve to illustrate principles, and to give them a fixed authority. But the law ..., exclusive of positive law enacted by statute, depends upon principles, and these principles run through all the cases according as the particular circumstances of each case have been found to fall within one or the other of them.
 
 
 23
 Jones v. Randall, 98 Eng.Rep. 954, 955 (1774) (emphases added). The "particular circumstances" of Frazier are so dissimilar from those of the instant case that to rely on Frazier is to exceed the limits of its logic and to adopt a mechanical jurisprudential approach.[2] Esposito and De Vos' location 1,668 miles from the Virgin Islands is so unlike Frazier's location 110 miles from New Orleans that this Virgin Islands case does not fall anywhere near the "particular circumstances" eliciting the Supreme Court's exercise of supervisory power in Frazier.
 
 
 24
 Two facts permeate any examination of the district court's residency requirements for admission to the Virgin Islands bar: the territory of the Virgin Islands is a setting significantly different from any found in the forty-eight contiguous states, and the District Court of the Virgin Islands is distinct from any federal district court located in the continental states. In my view, these differences transform Frazier into merely relevant, not controlling, authority. Frazier permits us to exercise our discretionary supervisory power to strike down a residency requirement; on these facts, we should decline to do so.
 
 
 25
 As disturbing as the majority's eagerness to overlook the facts that distinguish this case from Frazier, however, is its disregard of the implicit basis for the Frazier holding. Although residency requirements for admission to a federal court's bar were set aside in Frazier through the mechanism of supervisory power, Frazier was heavily premised upon the Supreme Court's privileges and immunities analysis of a state's bar residency requirement in Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). Thus, even assuming that our supervisory power is properly invoked on the facts presented here, such an exercise should at least be guided by the outcome of the Piper legal test.
 
 
 26
 I believe that the district court properly construed the privileges and immunities clause in light of Piper, that Frazier does not meaningfully alter the applicable analysis, and that there are unresolved factual issues in this case concerning the relationship of the unique circumstances of the Virgin Islands to the challenged residency requirements. For all these reasons, I respectfully dissent.
 
 I.
 
 27
 In Piper, the Supreme Court held that the exclusion of a nonresident from admission to the New Hampshire bar ran afoul of the privileges and immunities clause of the United States Constitution, art. IV, Sec. 2. The Court noted, however, that the privileges and immunities clause, " '[l]ike many other constitutional provisions, ... is not an absolute.' " Piper, 470 U.S. at 284, 105 S.Ct. at 1278 (quoting Toomer v. Witsell, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948)). It "does not preclude discrimination against nonresidents where: (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." Id. Applying Piper 's two-pronged analysis in this matter, the Virgin Islands district court concluded that the residency requirements of Rule 56, V.I.C. tit. 5, App. V (1982),[3] do not violate the privileges and immunities clause. This appeal followed.
 
 
 28
 While this appeal was pending, the Supreme Court, invoking "its inherent supervisory power to ensure that ... local Rules [of a federal district court] are consistent with 'the principles of right and justice[ ]' ", Frazier, 107 S.Ct. at 2611 (citations omitted), struck down in-state home and office requirements for admission to the bar of the United States District Court for the Eastern District of Louisiana. The Court explained that this exercise of supervisory power was intended "to prohibit arbitrary discrimination against ... [nonresidents] otherwise qualified to join the bar." Id. at 2611-12. After examining the challenged requirements in light of their claimed justifications, i.e., the assertion that such requirements "facilitate the efficient administration of justice, because nonresident attorneys allegedly are less competent and less available to the court than resident attorneys", id. at 2612, the Supreme Court found "both requirements to be unnecessary and irrational." Id.
 
 
 29
 The result in Frazier, while reached through nonconstitutional judicial methods, is informed by the factual and legal framework of the earlier Piper decision. In each case, for instance, the Court noted the relatively minor distance between the nonresident attorney-petitioner's home and the bar that he or she was not allowed to join. Frazier, 107 S.Ct. at 2613 ("[petitioner's home in Mississippi] is ... only 110 miles away" from "the New Orleans courthouse of the Eastern District"); Piper, 470 U.S. at 275, 105 S.Ct. at 1274 ("Kathryn Piper lives in Lower Waterford, Vermont, about 400 yards from the New Hampshire border"). In addition, the Frazier Court, citing Piper, stated its belief that most nonresident attorneys desiring admission to the bar would reside or practice in locations " 'reasonably convenient' " to the district court. 107 S.Ct. at 2613 (quoting Piper, 470 U.S. at 287, 105 S.Ct. at 1280). It also declared, relying on Piper, that "a nonresident lawyer is likely to have a substantial incentive, as a practical matter, to learn and keep abreast of local rules." Id. (citing Piper, 470 U.S. at 285, 105 S.Ct. at 1279). Finally, in assessing the necessity and rationality of the district court rule, Frazier employed an "alternative means" analysis, id., that is similar to the "less restrictive means" analysis of Piper. 470 U.S. at 284, 105 S.Ct. at 1278. Frazier did note, however, at least one distinction between the two cases:
 
 
 30
 [r]ules that discriminate against nonresident attorneys are even more difficult to justify in the context of federal court practice than they are in the area of state court practice, where laws and procedures may differ substantially from state to state.... The Court's supervisory power over federal courts allows the Court to intervene to protect the integrity of the federal system, while its authority over state court bars is limited to enforcing federal constitutional requirements.
 
 
 31
 107 S.Ct. at 2612 n. 7.
 
 
 32
 This Court properly considers whether a non-constitutional basis, pursuant to Frazier, exists for disposition of this appeal. I cannot agree, however, with the majority's belief that "the Supreme Court's ruling in Frazier v. Heebe requires that we invalidate the provisions of [the Virgin Islands residency requirements]." Maj. at 1396. The majority asserts that Frazier "is binding precedent here unless the status of the District Court of the Virgin Islands dictates otherwise." Id. Maj. at 1396. Nevertheless, the majority discusses only one aspect of that court's status: the fact that the District Court of the Virgin Islands derives its federal jurisdiction over the territory of the Virgin Islands from the Revised Organic Act, 48 U.S.C. Sec. 1612 (1982). Maj. at 1396; accord Government of the V.I. v. Bell, 392 F.2d 207, 209 (3d Cir.1968), cert. denied, 398 U.S. 937, 90 S.Ct. 1839, 26 L.Ed.2d 269 (1970).
 
 
 33
 I do not dispute that Congress intended the Virgin Islands district court, despite its unique origin,[4] to be integrated into the federal court system. Nor do I question that this Court may exercise its supervisory powers over the Virgin Islands district court in appropriate contexts. See, e.g., Government of the V.I. v. Bryan, 818 F.2d 1069, 1074 (3d Cir.1987) (approving Speedy Trial Plan of the District Court of the Virgin Islands); Government of the V.I. v. Romain, 600 F.2d 435, 437 (3d Cir.1979) (applying criminal procedure "rule adopted by the Supreme Court under its supervisory power over the courts of the United States and, thus, applicable to the courts of the Third Federal Judicial Circuit, of which the District Court of the Virgin Islands is one"). What the majority omits from its discussion of Frazier, however, are the factual aspects of that decision that I find dispositive in deciding that we should not employ our discretionary supervisory powers in this instance. First, the Frazier Court made factual assumptions that are simply not transferrable to the unique setting of the Virgin Islands. Second, Frazier was based on factual findings that are qualitatively different from the disputed facts considered by the Virgin Islands district court. Third, the district court in Frazier was not located in a territory; to the extent that our exercise of supervisory power extends beyond the district court to those Virgin Islands courts that function as territorial courts, it is particularly inappropriate.
 
 A.
 
 34
 In Frazier, the Supreme Court made a number of assumptions about the typical nonresident lawyer who desires to practice in the Eastern District of Louisiana. It stated, for example, that, "[a]s a practical matter, a high percentage of nonresident attorneys willing to take the [Louisiana] state bar examination and pay the annual dues will reside in places 'reasonably convenient' to the District Court." Frazier, 107 S.Ct. at 2613 (quoting Piper, 470 U.S. at 286-87, 105 S.Ct. at 1279-80). Regarding the in-state office requirement, the Frazier Court asserted that "there is no link between residency within a State and proximity to a courthouse." Id.
 
 
 35
 Although these assumptions made sense in the factual context of the Frazier case, they are inapposite here. The expectation that attorneys will endeavor to live in "reasonably convenient" locations, while plausible in the context of the contiguous States, is baseless here. Geographically, no such "reasonably convenient" location exists. See Appellee's Brief at 4 ("[a nonresident attorney] who reside[s] a short distance outside our boundaries would be a resident of the high seas"). The Virgin Islands Bar Examiner and Bar Association contend that no such location exists as a practical reality either, due to the inadequate travel and communication services that exist between the Virgin Islands and the mainland. Id. at 4-5. Directly at issue, therefore, is the very ability of even the most competent and otherwise available nonresident attorney to secure travel accommodations and effective communication services to the Virgin Islands on short notice.
 
 B.
 
 36
 Frazier was decided on a fully developed record; the district court made relatively straightforward findings of fact after a bench trial. It was uncontested, for instance, that the petitioner's residence in Pascagoula, Mississippi, was "only 110 miles away," Frazier, 107 S.Ct. at 2613, from the federal courthouse in New Orleans. The sole justification proffered by the judges of the Eastern District of Louisiana for promulgating their residency requirements was their desire to promote "the efficient administration of justice." In re Frazier, 594 F.Supp. 1173, 1183 (E.D.La.1984). In this regard, the Frazier district court found that "the relative unavailability of nonresident counsel seriously impair[ed] the administration of justice when quick action [wa]s necessary."[5] Id. There was also evidence that "lawyers admitted pro hac vice, who neither reside[d] nor maintain[ed] an office in Louisiana, fail[ed] to comply with the local rules and impede[d] the efficient administration of justice more than members of the bar of the Eastern District." Frazier v. Heebe, 788 F.2d 1049, 1054 (5th Cir.1986).
 
 
 37
 In direct contrast, the factual disputes here were resolved by the district court on cross-motions for summary judgment. The record therefore lacks the amount and quality of evidence that would tend to verify the central assertions offered by the Virgin Islands district court in support of the challenged residency requirements. As I discuss below with respect to Piper, these asserted justifications are more numerous and complex than those underlying the Eastern District of Louisiana rule in Frazier. They include not only the geographical isolation of the Virgin Islands, but also the effect that unavailable nonresident attorneys could have on the already huge caseload of the Virgin Islands district court, Esposito v. Barnard, Civil Nos. 206-207/1985, slip op. at 7 (D.V.I. Dec. 8, 1986), reprinted in Appendix ("App.") at 86; the administrative problems that would be involved in monitoring the ethical conduct of the nonresident members of the bar, id. at 9, reprinted in App. at 88; and the Virgin Islands' interest in the enforcement of its provisions for appointing counsel for indigent criminal defendants, Rule 16, V.I.C., tit. 5, App. V (1982). Esposito, slip op. at 7-9, reprinted in App. at 86-88. With the exception, perhaps, of the concern about the district court caseload,[6] the record evidence regarding each of these concerns differs markedly from the evidence in Frazier, where two district judges, two magistrates and the clerk of the Eastern District of Louisiana testified to administrative problems that are common to all federal district courts.
 
 C.
 
 38
 Today's exercise of supervisory power also ignores the "lurking tension," acknowledged by Esposito and De Vos, Transcript of Argument at 9, inherent in striking down a rule promulgated by the Virgin Islands district court that also applies to the territorial courts. Rule 56 governs admission to the bar of the Virgin Islands, which includes the right to practice before the territorial courts. While there is no doubt that the district court of the Virgin Islands is a component part of our federal court system, the territorial courts are not in that same category.[7] Over thirty years ago, our colleague Judge Maris explained the duality as follows:
 
 
 39
 It is settled that Congress has sovereignty over the territories of the United States and accordingly has power to legislate for a territory with respect to all subjects upon which the legislature of a state might legislate within the state ... And the right of Congress to revise, alter and revoke these delegated powers does not diminish the powers while they reside in the territory ... [But t]he aim of Congress is to give the territory full power of local self-determination. The local laws enacted under the legislative power granted by Congress are accordingly territorial laws, not laws of the United States.
 
 
 40
 Harris v. Boreham, 233 F.2d 110, 113 (3d Cir.1956) (emphases added) (citations omitted).[8]
 
 
 41
 The Revised Organic Act provides that "[t]he legislature of the Virgin Islands may vest in the courts of the Virgin Islands established by local law jurisdiction over all causes in the Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction." 48 U.S.C. Sec. 1611(b) (1982). These territorial courts of the Virgin Islands, established by local law and exercising jurisdiction defined by local law, are analogous to state courts. Admittedly, there is an inherent ambiguity in the status of the territorial courts, for they share concurrent jurisdiction with the federal district court in some areas, see 48 U.S.C. Secs. 1611(b), 1612(b)-(c) (1982), and appeals from the decisions of the territorial courts are taken to the district court. 48 U.S.C. Sec. 1613a (Supp. III 1985). Notwithstanding these links between the territorial courts and the federal courts (which have no analogue in the fifty states), I am convinced, as this Court was in Harris, that territorial law is not a subset of federal law. Moreover, the fact that Congress specifically made the privileges and immunities clause applicable to the Virgin Islands, 48 U.S.C. Sec. 1561 (1982), indicates the existence of a non-federal element to the Virgin Islands territorial law. Cf. JDS Realty Corp. v. Government of the V.I., 824 F.2d 256, 259 (3d Cir.1987) (applying commerce clause to the Virgin Islands despite Congressional silence), vacated and remanded, --- U.S. ----, 108 S.Ct. 687, 98 L.Ed.2d 640 (1988). For all these reasons, I believe that the territorial courts created by territorial law are not mere appendages of our federal court system. They are, instead, creatures of the territorial sovereignty of the Virgin Islands. Cf. In re Alison, 837 F.2d 619, 622 (3d Cir.1988) (Virgin Islands district court, sitting as Appellate Division to territorial court, is more akin to a territorial than to a federal appellate tribunal).
 
 
 42
 Today's holding, therefore, goes far beyond the boundaries of our previous exercises of our supervisory power over the Virgin Islands district court. Unlike Bryan, for example, where this Court, sitting as supervisor, approved "the promulgation by the District Court of the Virgin Islands of a [Speedy Trial] plan ... including those cases [tried in the district court] based on territorial crimes," 818 F.2d at 1073-74, the impact of today's decision will be felt not only by the Virgin Islands district court in the administration of those cases arising under federal laws, but also by the territorial courts. It is significant that Bryan analyzed the legality of the application of a federal statute to crimes defined by territorial law. In so doing, we relied on Government of the V.I. v. Ortiz, 427 F.2d 1043 (3d Cir.1970), and on Government of the V.I. v. Lovell, 378 F.2d 799 (3d Cir.1967), cert. denied, 396 U.S. 964, 90 S.Ct. 440, 24 L.Ed.2d 428 (1969), where this type of analysis was a prerequisite to the exercise of supervisory power over the Virgin Islands district court.
 
 
 43
 Parsing the territorial and federal aspects of the Virgin Islands courts has practical, as well as legal, import. The admission of nonresident attorneys to the Virgin Islands bar will impose a cost not only upon the federal government but also on the territorial purse. As the Attorney General of the Virgin Islands pointed out, although "[m]any of ... [the problems created by nonresident attorneys] can be minimized by money ..., the cost will be substantial and will be well beyond the means of most residents of the Virgin Islands." Brief of Amicus Curiae Government of the Virgin Islands at 6. Furthermore,
 
 
 44
 [t]he increased costs inherent in overcoming the barriers of long distances will also increase the already overburdened [Virgin Islands] [g]overnment budget. Both as the primary litigant before the courts and as the entity responsible for the operation of the Territorial Court system, the Government will be forced to assume substantially higher expenses....
 
 
 45
 Id. at 7. The increased costs of any transaction, whether it be a simple "conference telephone arrangement[ ]", Frazier, 107 S.Ct. at 2613, or a complex trial, will be borne by the territorial fisc. Where even a public defender system is beyond the means of the local government, it is inappropriate for this Court to assert its supervisory powers over the district court as a basis for striking down the residency requirements for all the courts within the territory. The Supreme Court even noted in Frazier that its authority to strike down bar residency requirements is arguably less sweeping in the context of state courts, "where laws and procedures may differ substantially from state to state", 107 S.Ct. at 2612 n. 7, than it is in the federal context.
 
 D.
 
 46
 Surely the Frazier "unnecessary and irrational" test, 107 S.Ct. at 2612, does not articulate a per se rule against residency requirements.[9] If anything, the instant case shows that there are wide regional differences within our federal court system. Thus, while Frazier recognized that federal district courts are part and parcel of a federal system in which "[t]here is a growing body of specialized federal law and a more mobile federal bar, accompanied by an increased demand for specialized legal services regardless of state boundaries," Frazier, 107 S.Ct. at 2612 n. 7, it also left these courts with enough flexibility to cope with the peculiar circumstances of their districts. If Frazier provides any guidance to the instant case, it is that we may, not must, use our inherent supervisory power to strike down improper residency requirements. If we do invoke our supervisory authority, we must discern whether the challenged residency requirements are "unnecessary and irrational", id. at 2612, by balancing our supervisory interest in preserving "the integrity of the federal system", id. at 2612 n. 7, against those competing interests articulated by the district court in support of the residency requirements. "Supervisory power" has never been a synonym for raw judicial power, exercised without regard to rational judgments and in the absence of an adequate factual record.
 
 II.
 
 47
 The majority's broad interpretation of the Frazier holding gives the Supreme Court, and this Court, unlimited 'supervisory' discretion over federal district courts in an area that has profound constitutional implications. Even if the Virgin Islands bar residency requirements are to be addressed under our supervisory power, our application of Frazier should be informed by the Piper analysis upon which Frazier relies so heavily. If, under the Piper test, Rule 56 must be struck down, I would concur in the judgment of the Court. However, the district court's application of Piper indicates just the opposite: Rule 56 meets the constitutional requirements of the privileges and immunities clause.
 
 
 48
 The district court, applying the two-part Piper test, decided this matter on cross-motions for summary judgment. Although the parties raised genuine issues of material fact that should have proceeded to trial or at least indicated the need for further discovery,[10] I believe that the district court construed the Piper legal test correctly.[11] Under the first prong of the Piper analysis, "[a] 'substantial reason for the discrimination' would not exist ... 'unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the [discriminatory] statute is aimed.' " Hicklin v. Orbeck, 437 U.S. 518, 525, 98 S.Ct. 2482, 2487, 57 L.Ed.2d 397 (1978) (citations omitted). Under the second Piper prong, "even where the presence or activity of nonresidents causes or exacerbates the problem the State seeks to remedy, there must be a 'reasonable relationship between the danger represented by non-citizens, as a class, and the ... discrimination practiced upon them.' " Id. (citations omitted). "In deciding whether the discrimination bears a close or substantial relationship to the State's objective, the Court has considered the availability of less restrictive means." Piper, 470 U.S. at 284, 105 S.Ct. at 1278.
 
 A.
 
 49
 With respect to the first prong of Piper, i.e., the requirement that there be a "substantial reason for the difference in treatment", between residents and nonresidents, 470 U.S. at 284, 105 S.Ct. at 1278, the district court found several "substantial reasons" justifying the residency requirements for admission to the Virgin Islands bar and noted in general that Aronson v. Ambrose, 479 F.2d 75 (3d Cir.1973), "expressed complete accord with the view that the reasons for excluding nonresidents from the practice of law [in the Virgin Islands a]re substantial." Esposito, slip op. at 5, reprinted in App. at 84. In Aronson, we rejected an equal protection challenge to the Virgin Islands residency requirement embodied in Rule 56, holding that the territory's geographic isolation and the attendant difficulties in transportation and communication justified the residency requirement.[12] In this case, the district court found that the geographic isolation of the Virgin Islands from the continental United States still justifies the exclusion of nonresident attorneys. The district court was
 
 
 50
 unpersuaded by plaintiffs [sic] argument[ ] that improvements in air services and other technological advances since the Aronson decision have made travel and communication to the Virgin Islands easy and accessible. The number of flights to [the] Virgin Islands have increased since Aronson. The number of tourists traveling to the Virgin Islands, however, has likewise increased. Air Travel on short notice remains difficult, if not impossible. Telephone service is erratic and frequently connections between the mainland and the territory are unavailable. Equally undependable are the services [that] provide for the transport of materials and documents to and from the mainland.
 
 
 51
 Esposito, slip op. at 6, reprinted in App. at 85.
 
 
 52
 The quality and availability of travel, telephone and delivery services to the Virgin Islands are "material fact[s]", Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), to the legal determination whether a substantial reason exists for the discriminatory treatment. The geographical isolation of the Virgin Islands may be mitigated by such services. If they are as inadequate as the district court perceived them to be, however, then the isolation of the Virgin Islands is certainly an "indicat[ion] that non-citizens constitute a peculiar source of the evil at which the [discriminatory] statute is aimed." Hicklin, 437 U.S. at 525, 98 S.Ct. at 2487 (quotations omitted).[13]
 
 
 53
 The district court also found that the effect of inevitable delays caused by unavailable nonresident attorneys on the burgeoning case load of the district courts was a "substantial reason" justifying retention of the residency requirements. Esposito, slip op. at 7, reprinted in App. at 86. This determination was also rooted in the geographic isolation of the territory from the continental United States. The district court began its assessment of the probable effect of the admission of nonresident attorneys on the Virgin Islands case load by noting the "vast disparity," id. at 7, between the pending cases per average judgeship in the United States district courts and the pending cases per judgeship in the Virgin Islands district courts for the same year.[14] Noting the "pressing responsibility upon the judges of [the Virgin Islands] ... to efficiently manage their caseloads," the district court explained further that "[i]nterruptions to accommodate delays occasioned by nonresident lawyers attempting to reach the islands, not to mention claimed conflicts respecting court appearances in the mainland jurisdictions in which they practice, cannot be countenanced." Id. at 7, reprinted in App. at 86. Repeated interruptions of court proceedings to accommodate the travel difficulties and scheduling conflicts of nonresident attorneys would no doubt disrupt the efficient movement of the court's docket and thus exacerbate the already heavy case load in the Virgin Islands. In my view, preventing such an "evil", Hicklin, 437 U.S. at 525, 98 S.Ct. at 2487, would be a substantial reason for the discriminatory treatment of nonresidents. The absolute magnitude of the Virgin Islands district court's caseload, coupled with the travel difficulties between the mainland and the Islands, reflects why this case, unlike Frazier, presents a legitimate concern regarding the "efficient administration of justice." 107 S.Ct. at 2612.
 
 
 54
 The district court also mentioned the "[in]ability of the courts and the bar to monitor and insure the ethical conduct of ... lawyers who do not reside in the territory." Esposito, slip op. at 9, reprinted in App. at 88. In Piper, the Supreme Court noted that "[t]he New Hampshire Bar would be able to discipline a nonresident lawyer in the same manner in which it disciplines resident members." 470 U.S. at 286 n. 20, 105 S.Ct. at 1279 n. 20. By contrast, the Virgin Islands Board of Bar Examiners and the Virgin Islands Bar Association contend that the costs and difficulty of investigating and disciplining unethical nonresident lawyers cannot be accommodated by the tiny Virgin Islands bar. App. at 56-57 (affidavit of Geoffrey Barnard); id. at 68-69 (affidavit of Patricia D. Steele). There is no assumption here that nonresident lawyers will be less ethical than resident lawyers. The concern expressed by the bar here is simply the added cost of disciplining nonresident lawyers, given its limited resources and its geographic distance from those lawyers it would have to oversee.
 
 
 55
 Finally, the district court found that the "most compelling" reason, Esposito, slip op. at 7, reprinted in App. at 86, to retain the residency requirement was the Virgin Islands' interest in the enforcement of Rule 16, V.I.C., tit. 5, App. V (1982).[15] Under Rule 16, all active members of the Virgin Islands bar are appointed on a rotating basis to represent indigent criminal defendants. Once appointed, each attorney must accept the assignment. Substitution is not permitted absent a court order. Attorneys appointed pursuant to Rule 16 must "communicate with the defendant at his [or her] place of incarceration ... no[ ] later than five days from the date of the clerk's mailing of the order of appointment." Id. Citing the delay in mail delivery, the difficulty in securing travel arrangements and the pressures of complying with the Speedy Trial Act, 18 U.S.C. Sec. 3161 (1982), the district court concluded that Rule 16 justifies the exclusion of nonresident attorneys from the Virgin Islands bar. Esposito, slip op. at 7-9, reprinted in App. at 86-88.
 
 
 56
 Rule 16's dual goal of ensuring adequate representation for indigent criminal defendants and the full participation of all members of the Virgin Islands' bar constitutes another substantial reason for discriminating against nonresident attorneys. This is so, at a minimum, because of the high risk of (1) inadequate notice to the attorney of his or her assignment by virtue of slow mail delivery, and (2) the nonresident attorney's failure to comply with the communication requirement of the rule, in person or otherwise, by virtue of the inadequacy of travel and telephonic services. Esposito and De Vos do not vigorously dispute that Rule 16 is a "substantial reason" for the discriminatory treatment under the first prong of Piper. They reserve their most vehement attack for the district court's conclusion that, under Piper 's second prong, the exclusion of nonresidents bears a substantial relationship to the objective of implementing Rule 16. Specifically, they argue that there are various "less restrictive means", 470 U.S. at 284, 105 S.Ct. at 1278, other than exclusion of nonresident attorneys from the Virgin Islands bar, by which Rule 16 can be implemented. This contention is discussed below.
 
 B.
 
 57
 The district court concluded that "the discrimination practiced against nonresidents, if indeed such be the case, is the least restrictive means of preventing the harm which would be caused by the admission of nonresident attorneys to the bar." Esposito, slip op. at 9-10, reprinted in App. at 88-89. Esposito and De Vos argue strenuously that, at least with respect to Rule 16, there are several less restrictive means of ensuring adequate representation to indigent criminal defendants. Among their suggestions are: (1) "assigning ... cases to attorneys who have become members of a pool of criminal defense attorneys by virtue of their experience and willingness to participate," Appellants' Brief at 17; (2) requiring "the association of nonresident attorney[s] with [attorneys] ... who reside[ ] in the territory," id.; (3) funding the legal representation of indigent criminal defendants by resident attorneys via interest that could be accrued on attorney trust accounts, Transcript of Argument at 15-17, or (4) funding such representation by imposition of a license or registration fee on nonresident attorneys. Id. at 17.
 
 
 58
 Each of these suggested "less restrictive means" overlooks one central fact: Rule 16 ensures that all lawyers who benefit from being members of the Virgin Islands bar share equally and directly in the responsibility of representing indigent criminal defendants. None of the purported alternatives, in other words, offers a less restrictive means to the end of Rule 16; moreover, Piper 's "less restrictive means" analysis does not require a jurisdiction to give preferential treatment to nonresident members of the bar.
 
 
 59
 Notwithstanding the mandatory participation characteristic of Rule 16, the majority concludes--without offering specific guidance--that "alternative resolutions to this problem are the answer." Maj. at 1396. The majority, refusing even to analyze the district court's reasoning in the peculiar setting of the Virgin Islands, relies instead on a blanket assertion that similar arguments were rejected in Frazier. Id. at 1396. If these "alternative resolutions" to Rule 16 are so obvious, then it is puzzling that the majority does not craft the precise rule that should be adopted by the Virgin Islands in Rule 16's place. This approach illustrates concretely the danger that "[less restrictive means] analysis, when carried too far, will ultimately lead to striking down almost any statute on the ground that the Court could think of another 'less restrictive' way to write it." Piper, 470 U.S. at 294-95, 105 S.Ct. at 1284 (Rehnquist, J., dissenting) (citations omitted). I cannot agree with this cursory approach to a very serious question, the resolution of which will affect profoundly the functioning of the Virgin Islands bar.
 
 
 60
 It is troubling that today's decision turns the privileges and immunities clause on its head by sanctioning discrimination against Virgin Islands resident attorneys. It is even worse that the majority promotes this perverse result without even inquiring into whether nonresident attorneys from jurisdictions as far away as New York and New Jersey can assume efficiently their fair share of the obligation of a Virgin Islands lawyer in criminal appointment cases. Were the district court's construction of the facts to be proven at a trial, then the residency requirements of Rule 56 would survive scrutiny under the second prong of Piper and should be sustained.[16]
 
 III.
 
 61
 The majority's unwillingness to confront the central factual and legal issues is a disservice to the members of the Virgin Islands bar, and more important, to the people they serve. Underlying the district court's reasoning in support of the bar residency requirement is the premise that travel and communications to the Islands are neither easy nor reliable. The majority, however, does "not believe that the parties' disagreement over the ease of travel and communications between the Virgin Islands and the continental United States is an issue of material fact." Maj. at 1395. In its view, a truly peculiar geographic setting has no relevance in determining whether a challenged residency provision violates the privileges and immunities clause or should be invalidated pursuant to our supervisory powers.
 
 
 62
 No meaningful analogies can be drawn between the facts of Piper and Frazier, and those before us. Unlike New Hampshire and Vermont, or Mississippi and Louisiana, which share borders, no state or territory of the United States is contiguous to the Virgin Islands. Unlike Piper and Frazier, no two-hour highway drive can transport appellants from their resident states of New York and New Jersey to the Virgin Islands district court of St. Croix or St. Thomas. Unlike Piper and Frazier, the ability of appellants to communicate effectively with clients, other attorneys, agencies and courts, by telephone and mail services, is disputed. Most significantly, unlike Frazier, where petitioner stressed no less than a dozen times in his brief to the Supreme Court that his home and office were closer to the district court than were those of many resident Louisiana state bar members, appellants here are geographically further from the district court, by more than a thousand miles and an ocean, than all resident members of the Virgin Islands bar. A residency requirement predicated on these obvious facts is neither "unnecessary" nor "irrational." Frazier, 107 S.Ct. at 2612.
 
 
 63
 I find it particularly disheartening that the distinguished federal judges of this Court have so easily written off as irrelevant their own experiences with the transportation and communication problems that plague the Virgin Islands. Even if only some members of this Court have had the frustrating experience of mailing case files to the Virgin Islands weeks before a sitting, only to learn that they are not available when they arrive to hear argument, or have had their judicial patience tested as they have waited for the connection of a phone call between the continental United States and the Virgin Islands, we should heed Chief Justice Taft's pointed observation that "[a]ll others can see and understand this. How can we properly shut our minds to it?" Bailey v. Drexel Furniture Co. (Child Labor Tax Case), 259 U.S. 20, 37, 42 S.Ct. 449, 450, 66 L.Ed. 817 (1922), quoted in Gomillion v. Lightfoot, 270 F.2d 594, 608 (5th Cir.1959) (Brown, J., dissenting), rev'd, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960).
 
 
 64
 The ultimate tragedy of the majority's decision is that, by ignoring the lessons of experience, it unnecessarily but significantly weakens the independence and the vitality of the Virgin Islands bar. One predictable result of this decision is that those lawyers who are willing to practice full time in the Virgin Islands and to make it their primary residence will soon be required to assume a disproportionate burden of representing Virgin Islands defendants in court-appointed criminal cases. This result seems inevitable; the only question is whether local counsel will appear in their own capacity for indigent defendants or as the reluctant representatives of unavailable nonresident attorneys. The majority, perhaps unwittingly, imposes this foreseeable burden on resident attorneys solely because nonresident attorneys such as Esposito and De Vos want the advantage of a dual practice in the mainland and in the Virgin Islands, despite their inability to discharge effectively the responsibilities of the latter practice. In my view, this arrangement is too much to ask of the resident members of the Virgin Islands bar.
 
 
 65
 For all these reasons, I respectfully dissent.
 
 
 
 [1]
 The district court permitted the plaintiffs to sit for the Virgin Islands bar examination, while reserving the issue of their eligibility for admission to the bar. Both plaintiffs passed the bar examination. Thus, there is no dispute that the only reason they were denied admission is because they are nonresidents of the Virgin Islands
 
 
 [2]
 The privileges and immunities clause of the United States Constitution has been extended to the Virgin Islands by the Revised Organic Act. 48 U.S.C. Sec. 1561 (1982)
 
 
 [3]
 While Judge Becker believes that there may be a case in which problems with travel or communications might create an issue of material fact, he believes that no such issue is created by what he deems to be the conclusory affidavits filed by the defendants here. Cf. Fed.R.Civ.P. 56(e)
 
 
 [4]
 In addition, appellants attack the validity of District Court Rule 16. See 5 V.I.C., App. V, Rule 16. We think this matter is better left for further consideration by the district court in light of the basic determination of this case
 
 
 [5]
 Stressing the need for accessability and availability of attorneys, the amicus curiae largely reiterates the position of the appellees
 
 
 [6]
 In view of our determination, we need not resolve the constitutional attack on the rules based on the privilege and immunities and equal protection clauses
 
 
 [1]
 See W. Holdsworth, Some Makers of English Law 161-62 (1938); C. Fifoot, Lord Mansfield (1936); F. Birkenhead, 14 English Judges 180 (1926)
 
 
 [2]
 See Pound, Mechanical Jurisprudence, 8 Colum.L.Rev. 605, 605-08, 613, 620-21 (1908); R. Aldisert, The Judicial Process 303-14 (1976)
 
 
 [3]
 Rule 56, entitled "Admission to the Bar", has two residency components. The first requires "[e]ach applicant ... [to] have resided in the Virgin Islands for at least one year immediately preceding his [or her] proposed admission to the Virgin Islands Bar." Rule 56(b)(4), V.I.C. tit. 5, App. V (1982). The second requires that each applicant, "[i]f admitted to practice ..., intend[ ] to continue to reside in and to practice law in the Virgin Islands." Rule 56(b)(5), V.I.C. tit. 5, App. V (1982)
 
 
 [4]
 Although the District Court of the Virgin Islands is not a "United States District Court" created pursuant to Chapter 5 of Title 28, 28 U.S.C. Secs. 81-144 (1982), it is granted all of "the jurisdiction of a District Court of the United States" by Section 22 of the Revised Organic Act, 48 U.S.C. Sec. 1612(a) (1982). Furthermore, Title 28 specifically includes the Virgin Islands within the third judicial circuit of the United States, 28 U.S.C. Sec. 41 (1982), and gives this Court jurisdiction to review final decisions of the Virgin Islands District Court. 28 U.S.C. Secs. 1244(3), 1291 (1982); 48 U.S.C. Sec. 1613a(c), (d) (1982)
 
 
 [5]
 There was specific testimony concerning the problems caused by unavailability of counsel in proceedings such as emergency depositions pursuant to Fed.R.Civ.P. 30(b)(2), emergency conferences pursuant to Fed.R.Civ.P. 26(c), or conferences regarding temporary restraining orders pursuant to Fed.R.Civ.P. 65(b). In re Frazier, 594 F.Supp. at 1183-84. Other problems described included the court's increased difficulty in conforming to the requirements of Fed.R.Civ.P. 5 and 34, id., and the general unwillingness of nonresident counsel to comply with the rules of the court. Frazier v. Heebe, 788 F.2d at 1056-58 (Goldberg, J., dissenting)
 
 
 [6]
 The majority, relying on Frazier, treats the district court's concern about administering its huge caseload as facially invalid. See Maj. at 1396. This concern takes on a different dimension than that in Frazier, however, because of the absolute magnitude of the Virgin Islands district court caseload. For example, statistics available from the Administrative Office of the United States Courts indicate that, within this judicial circuit in 1983, "[t]he Virgin Islands had almost twice as many pending cases per judgeship as the next highest district ...; almost five times as many new criminal filings per judgeship as the next highest district ...; and the highest number of civil cases requiring disposition of the districts in the Circuit." App. at 49
 
 
 [7]
 Judge Weis does not join this subsection
 
 
 [8]
 A footnote in Harris expressed this Court's refusal to
 subscribe to the statement .. that local laws continued in force in a territory by virtue of a provision of its organic act are laws of the United States. Such a view denies the existence of an independent, though delegated, sovereignty in the territory and treats its legislature as a mere federal agency.
 Harris, 233 F.2d at 113 n. 4.
 
 
 [9]
 At argument, appellants Esposito and De Vos pointed to Justice White's concurring opinion in Piper, 470 U.S. at 288-89, 105 S.Ct. at 1280-81 (White, J., concurring), as support for their assertion that Piper and Frazier invalidated residency requirements wholesale. The Virgin Islands Bar Examiner, on the other hand, noted that, at the time of the Court of Appeals' decision in Frazier, there were two dozen federal district courts that had residency requirements. Frazier, 788 F.2d at 1054 n. 7. These requirements were not explicitly invalidated by the Supreme Court, and I believe that their current vitality is an open question. In this regard, I note that the Supreme Court this Term has agreed to review a case involving a privileges and immunities clause challenge to a state bar residency requirement. Supreme Court of Va. v. Friedman, 822 F.2d 423 (4th Cir.), probable jurisdiction noted, --- U.S. ----, 108 S.Ct. 283, 98 L.Ed.2d 244 (1987), argued Mar. 21, 1988, 56 U.S.L.W. 3619 (U.S. Mar. 15, 1988)
 
 
 [10]
 The majority contends that the appellee's affidavits were insufficient to raise genuine issues of material fact, Maj. at 1395 n. 3. Unless the practice of giving all factual inferences to the non-moving party has lost all of its former meaning, the record compels me to disagree. The Chairman of the Committee of Bar Examiners of the Virgin Islands bar stated, inter alia, that (1) "particularly during what is locally referred to as 'the tourist season' between December and April, reservations may be totally unavailable for commercial flights," App. at 55 (affidavit of Geoffrey Barnard); (2) "[i]t is often difficult to secure a long distance [telephone] connection to a distant point, or to maintain a fully audible conversation without interference from static, voice fade outs, transmission gaps, or disconnections", id. at 56 (same); and (3) "[m]ail delivery is often unreliable and almost always involves material delay." Id. (same). Similarly, the President of the Virgin Islands Bar Association stated that, "while telecommunications between the Virgin Islands and the continental United States have improved substantially in the last decade, they remain erratic and conversations are frequently impaired by static, echoes, transmission gaps and disconnections." App. at 67 (Affidavit of Patricia D. Steele). These assertions are sufficient in my view to meet the requirements of Fed.R.Civ.P. 56(e) and (f); they raise genuine issues of material fact, and indicate the need for further discovery on the issue of the isolation of the Virgin Islands. The affidavits also indicate genuine issues of material fact with respect to the practical availability of less restrictive means for the accomplishment of the territory's objective. See id. at 56-58 (affidavit of Geoffrey Barnard); 67-69 (affidavit of Patricia D. Steele). For example, it is the Committee of Bar Examiners' position that "[t]he resources of the small Virgin Islands bar could never accommodate a serious and adequate investigation into the professional competence ... or the ethical standards of non-resident lawyers." Id. at 57 (affidavit of Geoffrey Barnard)
 
 
 [11]
 The challenged prospective one year residency requirement of Rule 56(b)(4) is, as counsel for appellee conceded at argument, harder to justify under Piper than the Rule 56(b)(5) requirement that the bar applicant state an "inten[tion] to continue to reside in and to practice law in the Virgin Islands." I, too, have serious reservations about any blanket requirement that all applicants to the bar must reside in the Islands for one year prior to application. The validity of a less restrictive rule, however, may have deserved further development at trial
 
 
 [12]
 We noted that
 as a practical matter the Virgin Islands may be reached from the mainland only by travel on limited and, frequently, congested airlines. The case load of the district court is continually increasing and it would be intolerable if the court were compelled to depend, even in part, on lawyers living and practicing on the mainland more than a thousand miles away to answer urgent motion calls, attend pretrial conferences, meet trial calendars and appear on short notice as court-appointed counsel for criminal defendants.
 Aronson, 479 F.2d at 78.
 
 
 [13]
 It is my view that the adequacy of travel and communication services between New York City or Miami and the Virgin Islands, as raised in appellant De Vos' affidavit, App. at 39-40, tells only part of the story. At the very least, there is no guarantee that all nonresident attorneys will hail from the New York area or other well-served markets
 
 
 [14]
 There are only two federal judges in the Virgin Islands: The Honorable Almeric L. Christian, who sits in Charlotte Amalie, and The Honorable David V. O'Brien, who sits in Christiansted. The district court noted that statistics issued by the Administrative Office of the United States Courts for the year 1983 indicate that there were, on average, 481 pending cases per judgeship in the district courts, whereas in the Virgin Islands there were 781 pending cases per judgeship. See Esposito, slip op. at 7, reprinted in App. at 86; supra note 6
 
 
 [15]
 Rule 16 is the "[p]lan of the District Court of the Virgin Islands promulgated to implement the Criminal Justice Act of 1964." Rule 16, V.I.C., tit. 5, App. V (1982). This rule was not attacked by Esposito or De Vos in their complaints, and no attack on its validity is properly before us
 
 
 [16]
 I do not address the application of Piper 's second prong to the other "substantial reasons" advanced by the district court. I note, however, that the same resource constraints that affect the analysis of Rule 16 might be applicable with respect to the other reasons. For example, in disciplining unethical nonresident attorneys, the Virgin Islands bar could charge nonresidents an enforcement fee or discipline unethical lawyers under its disciplinary rules. See Piper, 470 U.S. at 286 n. 20, 105 S.Ct. at 1279 n. 20. It is unclear, however, whether these "alternatives" present workable solutions in the isolated setting of the Virgin Islands. See supra note 10