116 F.3d 483
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rickie Louise FRENCH, Plaintiff-Appellant,
v.
CANADA LIFE ASSURANCE COMPANY, Defendant-Appellee.
Rickie Louise FRENCH, Plaintiff-Appellant,
and
Robert D. SILVER, Appellant,
v.
CANADA LIFE ASSURANCE COMPANY, Defendant-Appellee.
 Nos. 96-55993, 96-55086.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1997.
Decided June 10, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, Nos. CV-94-6837-RSWL, CV-94-6837-RSWL; Ronald S.W. Lew, District Judge, Presiding.
 
 
 2
 Before: RYMER and THOMAS, Circuit Judges, and PANNER, District Judge.**
 
 
 3
 MEMORANDUM*
 
 
 4
 Plaintiff Rickie Louise French sought benefit payments from defendant Canada Life Assurance Company under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. The parties settled the merits of the case at trial. The district court then awarded attorney's fees to French and sanctioned her attorney, Robert D. Silver, for late filing of pretrial materials. In appeal number 96-55086, French appeals from the district court's fee award and French and Silver appeal from the sanction order.
 
 
 5
 Several months later, the parties had still not agreed to a stipulation and dismissal of the settled claims. As a result, the district court dismissed the case with prejudice under Federal Rule of Civil Procedure 41(b). In appeal number 96-55993, French appeals from that dismissal.
 
 
 6
 We affirm the Rule 41(b) dismissal and the attorney's fee award. We reverse the sanction order.
 
 BACKGROUND
 I. The Dismissal Order
 
 7
 Following resolution of the merits at trial in late November 1995, the parties attempted to reduce the terms of the settlement to writing and to stipulate to a dismissal of the claims. The parties exchanged correspondence and draft settlement documents. French was initially dissatisfied because Canada Life's proposed stipulation and dismissal did not preserve her right to appeal the attorney's fee award. Later, French did not respond when Canada Life sent a revised stipulation, clearly preserving the attorney's fee issue.
 
 
 8
 In March 1996, the district court held a status conference during which it ordered Canada Life to send a proposed stipulation to French along with a check for the amount of the settled claims. The district court gave the parties two weeks to finalize the settlement and to file the stipulation and dismissal. Because French would not sign the stipulation, the parties failed to comply with the district court's order.
 
 
 9
 In April 1996, the district court asked Canada Life to file a Rule 41(b) dismissal motion. After briefing from both sides, the district court ordered the case dismissed with prejudice, with the exception of the attorney's fee issue then on appeal. The district court noted the procedural history of the case and indicated that there was no active dispute between the parties. Payment of the sums owed to French occurred within a few weeks of the dismissal order.
 
 II. Attorney's Fee Award
 
 10
 The district court concluded that French was the prevailing party and awarded her $8,830.50 in fees and $350.26 in costs under 29 U.S.C. § 1132(g)(1). Using the lodestar method to calculate the fee award, the district court determined that the requested hourly rates were reasonable. However, the district court subtracted several hours of requested time and then downwardly adjusted the final lodestar calculation by thirty percent because some of the time spent was related to an overpayment to French, many entries were "questionable and duplicative," Silver was ill-prepared to try the case, papers were not timely filed, and Silver was "unfocused and disorganized" in his presentation.
 
 III. Sanction Order
 
 11
 Although the district court's local rules made the pretrial order due before the pretrial conference, the parties failed to file one as of that time. The district court then rescheduled the pretrial conference and sanctioned Silver $290 for the inconvenience Silver's late preparation of the pretrial order caused defense counsel. This sanction is not contested on appeal.
 
 
 12
 Silver then submitted a witness and joint exhibit list on the day of trial instead of in advance of the pretrial conference. As a result, a few days after the scheduled trial date and after the conclusion of the hearing on attorney's fees, the district court issued a $5,000 sanction against Silver. Silver appeals from this sanction.
 
 STANDARDS OF REVIEW
 
 13
 We review a Rule 41(b) involuntary dismissal for abuse of discretion. Dahl v. City of Huntington Beach, 84 F.3d 363, 366 (9th Cir.1996). We must determine whether the dismissal was clearly outside the acceptable range of action based on the facts of the particular case. Id.
 
 
 14
 We also review the district court's decision to award attorney's fees in an ERISA action for abuse of discretion. Corder v. Howard Johnson & Co., 53 F.3d 225, 229 (9th Cir.1994).
 
 
 15
 In a 1996 case, we noted that we had not "squarely decided the question of what standard of review should govern appeals from decisions imposing sanctions for attorney conduct found to violate local rules." United States v. Wunsch, 84 F.3d 1110, 1114 (9th Cir.1996). We indicated that earlier decisions had suggested three possible standards: de novo, abuse of discretion, and "great deference." Id. (citing Professional Programs Group v. Department of Commerce, 29 F.3d 1349, 1353 (9th Cir.1994) (abuse of discretion); United States v. Lopez, 4 F.3d 1455, 1458 (9th Cir.1993) (de novo ); Guam Sasaki Corp. v. Diana's Inc., 881 F.2d 713, 715 (9th Cir.1989) ("great deference")).
 
 
 16
 A close reading of the cited cases reveals that the Guam Sasaki court used the "great deference" language descriptively and actually employed an abuse of discretion standard to review the lower court's action. Guam Sasaki, 881 F.2d at 716. Additionally, the Lopez court used the de novo standard only to review the district court's conclusion that specific conduct violated the local rules. Lopez, 4 F.3d at 1458.
 
 
 17
 Here, there is no question that Silver violated the local rules by filing the pretrial documents late. Thus, an abuse of discretion standard is appropriate to review other aspects of the sanction order.
 
 DISCUSSION I. Dismissal Order
 Rule 41(b) provides:
 
 18
 For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ..., operates as an adjudication upon the merits.
 
 
 19
 Before dismissing a case under Rule 41(b), the district court must weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Dahl, 84 F.3d at 366.
 
 
 20
 Here, expeditious resolution and the district court's need to manage its docket clearly favor dismissal. Additionally, without dismissal, Canada Life was prejudiced by having to continue to expend fees on the settlement process. In essence, because there was nothing remaining of the case, all the district court did was confirm the settlement. A Rule 41(b) dismissal was proper if the parties could not accomplish dismissal themselves. Based on the facts and posture of this case, dismissal under Rule 41(b) was not clearly outside the acceptable range of actions available to the district court. The district court did not abuse its discretion.
 
 II. Attorney's Fee Award
 
 21
 French contends that the district court abused its discretion by disallowing some hours, by downwardly adjusting the lodestar, and by not upwardly adjusting the lodestar. We disagree.
 
 
 22
 The district court properly deducted time spent by Silver on state court litigation and pre-filing attempts to settle the case. Cann v. Carpenters' Pension Trust Fund, 989 F.2d 313, 316 (9th Cir.1993) (ERISA "limits[s] the award to fees incurred in the litigation in court."); Downey Community Hosp. v. Wilson, 977 F.2d 470, 474 (9th Cir.1992) (award of attorney's fees in ERISA action should not include time spent on state court litigation). Furthermore, it was not an abuse of discretion to disallow time spent learning the federal rules, time spent preparing for the first pretrial conference which had to be rescheduled because of Silver's ill-preparedness, or time spent preparing documents and exhibits which were of little use because Silver was tardy in submitting them.
 
 
 23
 Only in rare instances should the lodestar figure be adjusted on the basis of other considerations. See, e.g., D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir.1990) (in ERISA action, adjustments to lodestar are exception rather than rule because lodestar is presumed to be a reasonable fee). Such adjustments are allowed based on the factors in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), which have not been subsumed in the lodestar calculation. D'Emanuele, 904 F.2d at 1383.
 
 
 24
 The district court downwardly adjusted the lodestar figure for the reasons stated above, implicating the Kerr factor involving the "experience, reputation, and ability of the attorneys[.]" Gates v. Deukmejian, 987 F.2d 1392, 1402 n. 12 (9th Cir.1993) (listing all twelve Kerr factors). Given the well-reasoned explanation for the district court's action and given that the district court had firsthand experience with the case and counsel, we cannot reach a "definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors." Corder, 53 F.3d at 229. The district court did not abuse its discretion in downwardly adjusting the lodestar. We also reject French's argument that the downward adjustment duplicated the $5,000 sanction. The downward adjustment was based on several factors besides the late filing of documents. In any event, as explained below, we reverse the sanctions order. Finally, given the presumption that the lodestar represents a reasonable fee, the district court did not abuse its discretion in failing to upwardly adjust it.
 
 III. Sanction Order
 
 25
 Under the Federal Rules, "[i]f a ... party's attorney fails to obey a scheduling or pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just...." Fed.R.Civ.P. 16(f). The district court has authority to impose monetary sanctions on counsel for local rules violations. Miranda v. Southern Pac. Transp. Co., 710 F.2d 516, 521-22 (9th Cir.1983); see also Zambrano v. City of Tustin, 885 F.2d 1473, 1477 (9th Cir.1989) ("We have consistently upheld the power of the district court to sanction attorneys for violations of local rules.").
 
 
 26
 In Zambrano, we established standards to guide the district court's exercise of discretion in imposing sanctions pursuant to statutory, as opposed to inherent, authority. Zambrano, 885 F.2d at 1479-80. The sanctions "must be consistent with the Federal Rules and with other statutes." Id. at 1480. The "order must be necessary for the court to 'carry out the conduct of its business.' " Id. (quoting Frazier v. Heebe, 482 U.S. 641, 645 (1987)). The order "must be consistent with principles of right and justice." Id. (internal quotation omitted). Any sanction imposed must be "proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power." Id. Finally, the sanctionable conduct must amount to "recklessness, gross negligence, repeated-although unintentional-flouting of court rules, or willful misconduct[.]" Id. (footnotes omitted) The district court's $5,000 sanction against Silver is unsupportable under these standards. There is no indication that the late filing interfered with the court's ability to conduct its business. There is no evidence that Silver's conduct amounted to recklessness, gross negligence, or willful misconduct. The evidence does not show that he deliberately flouted court rules. Although Silver had also failed to timely file the pretrial order, it does not appear that he had more than these two episodes of unintentional rule violations. As the Zambrano court noted: "A practice that punishes mere negligence on the part of counsel is not necessary to the orderly functioning of the court system, especially in light of the availability of alternative remedies." Id. (footnote omitted).
 
 
 27
 Finally, the amount of the sanction is not proportionate to the offense,when considering that this was Silver's first federal court trial. Thus, we conclude that the district court abused its discretion in sanctioning Silver $5,000 for the late filing of the witness and exhibit lists.
 
 
 28
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 **
 Honorable Owen M. Panner, Senior Judge, United States District Court for the District of Oregon, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3